THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVID BLUMENFELD, Plaintiff in Error.

*Opinion filed April 21, 1928—Rehearing denied June 21, 1928.*

1. CRIMINAL LAW—*the circuit court may, independently of statute, call or re-convene a special grand jury.* Although the statute makes it the duty of the board of supervisors in a particular county to provide a grand jury for the term at which the defendant was indicted for a felony, its failure to perform that duty will not render the indictment returned by a re-convened special grand jury invalid, as the circuit court has cognizance of felonies, and has, independently of statute, an inherent right, at common law, to summon a grand jury or a special grand jury, or to re-convene the same at the term at which it was called, whenever the ends of justice require it to do so.

2. SAME—*special grand jury may investigate any offense within the jurisdiction.* A special grand jury is not restricted to the investigation of offenses committed after the regular grand jury has adjourned but may inquire into and presentment make of any offense committed within the jurisdiction of the court and not barred by the Statute of Limitations.

3. SAME—*defendant's counsel are entitled to adequate time to prepare defense.* While it is highly important that justice should be speedily meted out and that criminals should be punished with celerity and dispatch, the provision of section 9 of article 2 of the constitution that the accused shall have the right to appear and defend in person and by counsel includes the right of an adequate time in which to prepare his defense, and his counsel cannot be compelled to go to trial unprepared and without an opportunity of studying the case.

4. SAME—*defendant's counsel not required to neglect business of other clients.* Counsel employed by a defendant are not required to neglect the business of clients by whom previously retained.

5. SAME—*when defendant is entitled to a continuance.* A defendant asking for a continuance need not show the same degree of promptness and diligence in preparing for trial at the term at which the indictment is returned as at subsequent terms, and where affidavits filed in support of a motion at the term at which the defendant was indicted show that his counsel was occupied with the trial of another case in another city, that he has been unable, up to the time set for trial, to procure the witnesses it is claimed would testify to an alibi and that he has had but little opportunity to consult the defendant, a continuance should be granted to the next term, especially where the case rests entirely upon the identification of the defendant by witnesses to the crime, which was committed more than two years before the trial.

6. SAME—*when evidence of accusation and silence of defendant is not admissible.* Where the defendant is taken, alone, before the president of the bank he is charged with having robbed and remains silent when the president gives an affirmative answer to the question whether the defendant was present at the commission of the offense, testimony of witnesses to the accusation and silence of the defendant is not admissible where there is evidence that the defendant had been previously instructed by his attorney to remain silent, as silence under such circumstances is not an admission of the truth of the accusation.

7. SAME—*what evidence may be stricken as immaterial.* Where the defense is an alibi and a witness for the prosecution has testified that the defendant was not at her rooming house on the day of the commission of the crime, as claimed by him, but was there at another time given by the witness, testimony of the defendant and other witnesses tending to show that he was in another city at the time given by the witness for the prosecution may be stricken as being immaterial to the case, and the statement of the State's witness should also be stricken for the same reason.

FARMER, J., dissenting.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

COSTIGAN & WOLLRAB, GEORGE F. BARRETT, and CHARLES V. BARRETT, (WILLIAM C. WERMUTH, and EDWARD L. HOYER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JAMES A. LIGHT, State's Attorney, EDWARD C. FITCH, and JESSE R. WILLIS, for the People.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, David Blumenfeld, was convicted in the circuit court of McLean county of the crime of robbery and brings the record of his conviction here for review upon writ of error.

The crime for which plaintiff in error was convicted was the robbery of the Farmers Bank of Chenoa on January 13, 1925, and is the same crime for which Harry Funk was convicted, the record of which conviction was reviewed by this court and an opinion filed therein, which is reported as *People* v. *Funk,* 325 Ill. 57. It is the contention of the prosecution in this case that plaintiff in error is the person who is called McAndrews in *People* v. *Funk.*

It is contended by plaintiff in error that the court erred in overruling his motion to quash the indictment, on the ground that the body which returned the indictment into court was an illegal body. By statute four terms are provided for the circuit court of McLean county, viz., on the second Monday of September, first Monday of November, first Monday of February and fourth Monday of April of each year. The Circuit Court act provides that some of the circuit courts are excused from calling grand juries as to certain specified terms. McLean county is not so excused. The indictment against plaintiff in error was returned at the April, 1927, term of the circuit court of McLean county. No grand jury for that term was provided by the board of supervisors of the county and no order was entered by the judge of the court dispensing with the grand jury for that term on the ground that it was not necessary for the speedy administration of justice to summon such grand jury. On April 25, 1927, the State's attorney filed

a petition in the circuit court asking for a special grand jury on the ground that "the ends of justice demand that a special grand jury be called at the present term of the circuit court of said county, for the reason that there are several persons in the county jail of the county aforesaid unable to furnish bail and entitled under the law to a trial at a term of court beginning not later than four months from the several dates of their commitments." Plaintiff in error had not then been arrested and was not then in the county jail. Acting on the petition of the State's attorney the court entered an order calling a special grand jury to meet April 27, 1927, which special grand jury met on that day and returned nineteen indictments. Plaintiff in error was not among the persons indicted. After returning these indictments into court this special grand jury dispersed but no order was entered of record adjourning it. Thereafter, on May 17, 1927, the State's attorney petitioned the circuit court of McLean county that the "special grand jury which has been heretofore summoned, re-convened and excused by this court, subject to this court," be re-convened on the ground that there was a person confined in the county jail of the county charged with a felony who would be entitled to a trial at the April term of the court or thereby discharged by operation of law unless he was so tried and his case disposed of at that term, and that there were several matters of unfinished business which can now be discharged by the special grand jury. Plaintiff in error was not then confined in the county jail of McLean county and no proceedings had been commenced against him in McLean county, so that his case did not come under the head of unfinished business. The court entered an order for the re-convening of the special grand jury on May 19, 1927, at which time they met and without being re-sworn returned the indictment upon which plaintiff in error was convicted. The original venire issued April 25, 1927, by the clerk of the circuit court to the sheriff as it appears in the abstract, con-

tains the names of the twenty-three persons to be summoned by the sheriff as such special grand jury, so that it would appear that these twenty-three persons had been selected by some person prior to the issuing of the venire to the sheriff instead of by the sheriff, as required by law. No point is made with reference to this irregularity and so it will not be considered.

It is contended by plaintiff in error that no regular grand jury having been summoned for the April term the court was without power to order a special grand jury. The legislature has wisely provided that a grand jury should be selected in counties like McLean by the board of supervisors, an impartial body, from the various towns in the county, rather than by the sheriff, who in many instances is largely interested in procuring the indictment of persons whose cases are submitted to the grand jury for investigation. The dereliction of duty of boards of supervisors can not be allowed, however, to block the administration of justice or to permit persons guilty of crime to escape just punishment in this State, as the circuit court has cognizance of felonies, and therefore has, independently of statute, an inherent right, as at common law, to summon a grand jury or a special grand jury whenever the ends of justice require it to do so. (*Stone* v. *People,* 2 Scam. 326; *People* v. *McCauley,* 256 Ill. 504; *People* v. *Brautigan,* 310 id. 472; *People* v. *Cochrane,* 307 id. 126; *Brewer* v. *State,* 208 S. W. 290; *Green* v. *State,* 60 Fla. 22; *Cannon* v. *State,* 62 id. 20; *Bird* v. *State,* 142 Ga. 596.) It is likewise contended by plaintiff in error that the special grand jury having performed the duties for which it was called became *functus officio* and could not be re-convened, as the statute only provides for the re-convening of regular grand jurors and not special grand jurors, and that a special grand jury and a re-convened grand jury can only act upon the matters specified in the order for their summoning or re-convening. A special grand jury, when legally organized, is in law a

valid grand jury for every purpose, and in this State the circuit court has inherent power, independently of statute, of re-convening a special grand jury. (*People* v. *McCauley, supra.*)  A special grand jury is not restricted to the investigation of offenses committed after the regular grand jury has adjourned, but may inquire into and presentment make of any offense committed within the jurisdiction of the court not barred by the Statute of Limitations. (*State* v. *Overstreet,* 31 S. W. 35; *Dawson* v. *State,* 180 id. 761; *People* v. *McDonell,* 47 Cal. 134.)  While it was the duty of the board of supervisors to have provided a grand jury for the April term of court, its failure to perform that duty would not render the indictment in this case invalid, and the court did not err in refusing to quash it.

The crime for which plaintiff in error was convicted was committed January 13, 1925.  Plaintiff in error was first arrested therefor on May 14, 1927, about ten o'clock at night, after he closed his store at 4568 Broadway, Chicago.  He was then taken to a police station in Chicago, where he was confined until Tuesday morning, May 17, at ten o'clock, and then taken before a judge of the circuit court of Cook county on a writ of *habeas corpus.*  The hearing was continued until May 23 to give the State's attorney of McLean county time to bring witnesses to Chicago to identify plaintiff in error, and in the meantime plaintiff in error was released after giving bond in the sum of $20,000 for his appearance on May 23 in the *habeas corpus* proceeding.  On Friday night, May 20, notwithstanding their knowledge of the pendency of the *habeas corpus* proceedings, McLean county officials attempted to take plaintiff in error out of the jurisdiction of the Cook county court.  He was taken to the Town Hall police station by police officers and from there to the detective bureau, where he was held until Saturday morning, May 21, when he was again before the circuit court and released until May 23, at which time the *habeas corpus* proceeding was continued until June

10, at which time he was turned over to the McLean county authorities, who first took him on that day to Chenoa and after remaining there about forty minutes took him to the McLean county jail, where he was confined until the time of the trial.

On the 8th of July plaintiff in error made a motion in the circuit court for a continuance until the next term of court, supported by his own affidavit and that of Fred W. Wollrab, on the ground of absent witnesses and inability of his counsel to prepare for the trial of his case. The affidavit of Wollrab was to the effect that he was one of the members of the firm of Costigan & Wollrab; that Costigan, of that firm, while on a vacation, was sought by plaintiff in error about the 10th of June, 1927, whereupon the affiant advised him that Costigan was out of the city for about nine days; that thereupon plaintiff in error sought to know whether his case would be tried at the April term of court and whether he could afford to await such return; that at the suggestion of plaintiff in error affiant attempted to learn from the State's attorney if the case was to be tried at the April term of court; that he called at the office of the State's attorney on four occasions within the period of three days after plaintiff in error was confined in the county jail and was advised by the assistant State's attorney on each occasion that he would see the State's attorney and let the affiant know; that affiant never afterwards heard about the subject until July 2, 1927, when plaintiff in error was arraigned and the day for trial tentatively set for July 11, 1927; that Costigan, who was personally sought by plaintiff in error to act as his attorney, was previous to June 10, 1927, employed to take depositions for the trial of a suit in the Federal court at Springfield involving patent rights, claims of unfair competition and infringement claims estimated at and involving several hundred thousand dollars; that Costigan, believing that the criminal cause of plaintiff in error would not be tried at the April term of court, pro-

ceeded to join in the trial of the suit in the Federal court, which was called to trial prior to the arraignment or notice of any intention to set the Blumenfeld case for trial; that while in the trial of that cause, Costigan, through affiant, was given notice that plaintiff in error was arraigned and the trial date set for July 11; that Costigan was at the date of making the affidavit (July 7, 1927,) in Springfield still busy in the trial of the case and expected to be obliged to remain there until the close of the trial, estimated to be during the week of July 11, 1927; that because of the absence of Costigan and the insistence of the court and State for hearing, plaintiff in error has been obliged to be represented on hearings, up to the time of the making of the affidavit, on various motions by the affiant, who was not generally engaged for practice of this nature and in particular was not engaged by plaintiff in error to look after his case except to assist Costigan; that since June 18, 1927, at the time of the retention of Costigan to represent plaintiff in error, investigation, extensive and voluminous, both in the circuit court as to certain alleged defective special and re-convened special grand jury meetings, was made, which has been covered by motions to quash and reduce bail, presented, by necessity, by affiant in the absence of Costigan; that since the employment of Costigan an investigation for witnesses has been made in this case, and the time has been entirely too limited to find certain witnesses in a strange city who had seen plaintiff in error and know that he was in Orleans parish, Louisiana, on January 13, 1925; that the limitation of time was accentuated by the fact that counsel for plaintiff in error had been limited by their diverted attention to other litigation in which they were retained before being retained in this cause; that this is particularly true as the circumstances disclose a request to learn if the trial is to be had, and the prosecution ignored the request; that the trial docket for the term is past, the time in the term is late and at such time when the term is usually

330—31

adjourned; that the scene of plaintiff in error's alibi is laid in New Orleans, 900 miles or more from the home of defendant and amongst mostly strangers, excepting his companion, who is since deceased; that plaintiff in error has been confined in jail up to this time and has been unable to give aid to his attorney as to matters of evidence; that Costigan cannot fairly present the defense with the assistance of affiant even though he should withdraw from the Federal case, because of the limited time; that the State has a decided advantage of long preparation for the trial under similar facts for the same robbery in the case of Harry Funk, of whom plaintiff in error is an alleged accomplice; that this puts plaintiff in error at a disadvantage to overcome those who can claim to make identification after a period of two and one-half years unless given time to prove the identification to be false; that the time of preparation given counsel in this case is not sufficient to afford a fair opportunity to prepare a defense and complete the investigation which the cause justifies; that if given until the next term of court affiant verily believes that the defendant can be released on bail so as to personally make his investigation as to the facts pertaining to his presence in New Orleans on January 13, 1925, which is necessary to be done to defend this case, as others than the defendant cannot successfully investigate or interview witnesses who know material facts as to said alibi without defendant being present to have witnesses talk to and see the defendant and recall the specific circumstances necessary to fix a date of two and one-half years ago in their minds as the date at which they saw plaintiff in error in New Orleans. The court denied this motion for a continuance and later set the case for hearing on the 25th of July.

On July 23, 1927, plaintiff in error made a second motion for continuance, based upon his own affidavit and that of attorney Costigan. In his affidavit for continuance plaintiff in error says that he was first served with a *capias* under

the indictment on May 20, 1927, at his place of business in Chicago; that from the time of the service of the writ until June 10, 1927, when he was brought to the county jail of McLean county, he was continuously and vigorously engaged in making his defense in connection with a hearing on writ of *habeas corpus* before one of the circuit judges of Cook county; that during the pendency of these proceedings, which were adjourned from time to time, he was admitted to bail under the sum of $20,000; that he was personally present and appeared before the court in Chicago at all times when required; that he has been confined continuously in the county jail of McLean county since the 10th of June, 1927; that when the *capias* was issued in this cause his bond was fixed by the circuit court of Mc-Lean county at the sum of $100,000; that immediately subsequent to his arrest on the *capias,* and continuously thereafter until July 5, he sought the aid and assistance of friends, relatives and acquaintances in an effort to furnish bond in the sum of $100,000 as fixed by the court; that he was unsuccessful in his efforts to obtain bondsmen, and on the 5th day of July, 1927, filed a written motion setting forth that the fixing and requiring of bail in the sum of $100,000 was a denial of the rights guaranteed to him under both the constitution of the United States and the constitution of the State of Illinois and upon the basis that the bail so fixed was oppressive, unreasonable, excessive and unwarranted; that upon a hearing of the motion it was allowed by the court and on July 5, 1927, the amount of the bail reduced to the sum of $50,000; that thereupon he renewed his efforts to obtain bail and secure his liberty for the purpose of obtaining an opportunity to prepare his defense on the charge brought against him; that through the efforts of friends, relatives and acquaintances in Chicago he was successful on July 14 in obtaining sureties who could qualify in the amount required by statute and who were willing to act as bail for him; that said sureties immedi-

ately came in person from the city of Chicago to Blooming-
ton and he thereupon filed a motion to be admitted to bail
in the cause, to which motion were attached the several
affidavits of the sureties, duly subscribed and sworn to by
them; that the motion was filed in court on the 14th day
of July, 1927; that on the 15th of July, 1927, written re-
cognizance signed by plaintiff in error and by the sureties,
together with sworn affidavits in justification of the sureties
thereon, were filed in the cause; that thereupon the sure-
ties were examined upon oath in the circuit court room of
McLean county as to their qualifications; that upon the
conclusion of the hearing the court took the matter under
advisement and on July 18, 1928, entered the following or-
der upon the docket: "Defendant not having been commit-
ted to jail for failure to give good and sufficient bail, a
judge in vacation has no authority to accept bail;" that on
July 8 the court, without notice to affiant or his attorneys,
adjourned until July 22; that affiant being a total stranger,
with neither friend nor relative in McLean county, never
before having been in the county in his life, found some
difficulty in procuring bail immediately, and by reason of
the ruling of the court he was obliged to wait until July 22
before his bail would be accepted by the court; that he is
innocent of the charge made in the indictment, and that on
January 13, 1925, the day on which it is alleged he commit-
ted said offense, he was in New Orleans, approximately
900 miles distant from Chenoa, McLean county; that in
order to travel the distance between Chenoa and New Or-
leans by the fastest train approximately twenty-six hours
of time is required; that he was accompanied by Sol. Rob-
inson, now deceased; that he was in Robinson's presence
on the afternoon of the 13th of January, 1925; that affiant
roomed with Robinson at a rooming house, the location of
which is to him unknown except that the street on which
the boarding house was located was Malpomance street;
that affiant met several persons there, together with the

landlady of the rooming house, the names of the parties having since been forgotten because the acquaintance was short and casual; that he feels confident that if the cause is continued and he is released on bail he can produce the witnesses who knew of his being at the boarding house on January 13, 1925; that affiant roomed in the room next adjoining that of Al. Cohn; that it is essentially necessary to his defense that he meet with, personally talk to and interview witnesses who were present at the rooming house on January 13 and with whom he is obliged to have personal contact to refresh the memory of witnesses with incidents and circumstances establishing that affiant was present on that date, and that unless affiant is afforded the means by his release and by continuance of this cause to make such personal investigation, his defense will be prejudiced so that he will not be able to fairly and truthfully meet the witnesses to be introduced by the prosecution who seek to convict him upon identification made two and one-half years ago; that he honestly believes that if given additional time he can procure witnesses who will testify that he was in New Orleans on January 13, 1925, said witnesses being the landlady, whose name is unknown, as well as others who were present in or about the rooming house on said date and thereabouts; that he became acquainted during his stay in New Orleans with Will Frank; that Frank, when last heard of, resided in New Orleans at the rooming house; that Frank would testify, if produced as a witness, that he met affiant on the evening of January 13, 1925, at the St. Charles Hotel, in the city of New Orleans, where they discussed horse races, which were at that time being run in New Orleans; that for the lack of a more definite address and because of his confinement and inability to find Frank he instructed his attorneys to send a subpœna issued from the clerk's office of the circuit court of McLean county direct to the sheriff of the parish of Orleans, Louisiana, directing him to find and serve Frank and to

immediately advise plaintiff in error in the event that such witness could not be procured, a copy of which letter, together with the reply from the sheriff advising that the witness could not be found, is attached to the affidavit and made a part of the motion; that if the cause is continued to the September term of court he will produce said witnesses at that time and that they will testify to the facts stated, all of which facts are true; that on the 13th of January, 1925, while he was in the city of New Orleans, he met and conversed with Al. Cohn, of Chicago, who will testify to the truth of the fact when called as a witness; that Cohn will testify that he was in New Orleans for the purpose of attending the races and that he saw affiant on the 13th of January, 1925, and for a period of about two weeks thereafter, in the parish of Orleans, Louisiana, and that they roomed next to each other at New Orleans on the night of January 13, 1925, and spent some time in conversation with each other and with Sol. Robinson; that Cohn is a material witness in the trial of this case; that he has no permanent, definite place of residence known to affiant, although he can usually be found at 25 North May street, Chicago; that since July 2, 1927, affiant, through his friends and relatives and with the aid of his attorneys, has made a diligent search and investigation to find Cohn; that thus far he cannot be found at the address aforesaid but left word at said address that he would return about three weeks after attending the races; that he left no other information as to where the races that he would attend were located nor at what place or places he could be found in any of the intervening time; that he left to go to the races about June 29 or 30, according to affiant's best information; that Cohn left without the knowledge, connivance or procurement of affiant, either directly or indirectly; that investigation has been made as to the present whereabouts of Cohn at the race tracks in Chicago and amongst those of his associates who know him best at the address afore-

said; that Cohn left no mailing address, and affiant has
earnestly and diligently endeavored to get in touch with him
ever since learning of the date set for the time of the trial
when first suggested to defendant on July 2, 1927; that on
the 11th day of July a subpœna was duly issued by the
clerk of the court addressed to the sheriff of Cook county
commanding him to summon Cohn to appear before the cir-
cuit court of McLean county on the 25th day of July, 1927;
that the subpœna was immediately transmitted to the sher-
iff of Cook county and has been in his hands until the pres-
ent time; that the subpœna has been returned to the at-
torneys of affiant by a deputy sheriff of Cook county, who
held the same for service; that Cohn could not be found
in Cook county up until the 21st of July, 1927; that the
deputy sheriff repeatedly endeavored to serve the subpœna
upon Cohn at No. 25 North May street, Chicago, and en-
deavored to locate him in the city of Chicago; that the
sheriff of Cook county has been delivered alias writs of
summons issued by the clerk of this court for service upon
Cohn and has been instructed to immediately notify the
attorneys for affiant in the event that service can be pro-
cured; that up to the time of the filing of this motion
affiant has received no word that service has been had up-
on Cohn or James McCarthy or that they have yet been
found; that McCarthy is a material witness upon the trial
of the cause; that affiant caused a subpœna to be issued
by the circuit clerk of McLean county on the 11th day of
July, 1927, commanding the sheriff of Cook county to sum-
mon him to personally appear before the circuit court on
the 25th of July, 1927; that said writ was delivered to
the sheriff of Cook county on July 12, 1927, and from said
date until July 21, 1927, was in the hands of a deputy sher-
iff of Cook county for service; that McCarthy resides at
511 North Clark street, Chicago; that service was attempted
to be had upon him by a deputy sheriff of Cook county,
who was informed that McCarthy was out of the city;

that the deputy sheriff could not ascertain definitely when McCarthy would return; that the sheriff of Cook county now has in his hands an alias writ for McCarthy and is endeavoring to serve the same upon him, and has been directed to immediately notify the attorneys of affiant in the event of obtaining such service; that no word to the effect that service has been obtained has been received up to the time of the filing of this motion; that McCarthy is not absent with the knowledge, connivance or procurement of this affiant, either directly or indirectly; that Mc-Carthy, if present at the trial of the cause, would testify that on the evening of January 13, 1925, in the city of New Orleans, he met affiant at a hotel and there conversed with him about a certain obligation which McCarthy claimed against affiant; that there are no other witnesses who can or will testify to the facts stated; that in the event the cause is continued to the September, 1927, term of the circuit court of McLean county affiant expects to procure the attendance of the absent witnesses. The affidavit states further facts upon which affiant bases his opinion that he will be able to obtain the presence of the absent witnesses at that time. The affidavit also sets up the inability to prepare for the trial of the case by reason of Costigan's other engagements.

Costigan's affidavit sets up facts stated in the affidavit of Wollrab and his engagement in taking depositions from June 28, 1927, until July 19, 1927; that it was necessary to rely principally for plaintiff in error's defense upon evidence of identification of plaintiff in error in New Orleans on January 13, 1925; that affiant is unable to properly present the defense of the defendant within the limited time allowed; that the prosecution has had the aid and assistance of the Illinois Bankers' Protective Association, with its investigators and detectives, also the law enforcing officers of McLean county, to assist in making an investigation for the prosecution of the case, while defendant has been con-

fined in jail since June 10, 1927, and has had no assistance other than his attorneys in preparing his case.

Plaintiff in error assigns as error the action of the court in overruling his motions for a continuance. While it is highly important that justice should be speedily meted out and that criminals should be punished with celerity and dispatch, it is much more important that before punishment should be inflicted upon a person accused of crime full opportunity should be given to place the court in possession of all the facts bearing upon the question of the guilt or innocence of the accused, so that the court and jury may ascertain the truth as to whether or not the person accused is, in fact, guilty of the crime. Section 9 of article 2 of the constitution of this State provides that in all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel. This right includes reasonable time for counsel to prepare the defense. The constitutional guaranty that an accused shall have the assistance of counsel is not a barren right but one of inestimable value to him, and he should not be deprived of it by compelling counsel to go to trial unprepared and without an opportunity of studying the case. If the accused is to have the assistance of counsel, counsel must have adequate time to prepare to render such assistance. (*State* v. *Pool,* 50 La. Ann. 449.) A defendant's right to have counsel and to have his counsel prepare his case for trial is a substantial right, and to deny counsel sufficient time in which to prepare the case is the denial of a substantial right. (*Shaffer* v. *Territory,* 127 Pac. 746.) A trial is a farce,—indeed, is no trial at all,— if the defendant be not given an opportunity to prepare for trial,—which is but another way of saying "an opportunity to be heard." (*Schields* v. *McMicking,* 23 Phil. 526.) Counsel when employed by a defendant are not required to neglect the business of clients by whom they have been previously retained. It has never been regarded necessary for a defendant to show the same degree of promptness

and diligence in preparing for trial at the term at which the indictment is returned as at subsequent terms. (*North v. People,* 139 Ill. 81.) There was no attempt in this case to show a connection between Funk and plaintiff in error prior to January 13, 1925. No evidence of his acts prior to that day tending in anywise to show his guilt was introduced. No evidence was introduced as to any confessions of plaintiff in error nor of his possession of the stolen property. The one vital question of fact in the case was the whereabouts of plaintiff in error on January 13, 1925. The only evidence in any way connecting him with the commission of the crime was the identification of witnesses who claimed to have seen him in Chenoa on January 13, 1925, made more than two years after that time. The motion for a continuance was made at the same term of court at which the indictment was found. The statements contained in the affidavits in support thereof must be taken as true, and they were amply sufficient to entitle plaintiff in error to a continuance until the next term of court.

There was no direct evidence of the commission of the crime of robbery. Kelly, the president of the bank, from whose possession the property was alleged to have been taken by force and violence, had died in the interim between the trials of Funk and plaintiff in error. On June 11, 1927, the day following plaintiff in error's incarceration in the McLean county jail, the State's attorney, assistant State's attorney, special prosecutor, sheriff and deputy sheriffs, without authority of law took plaintiff in error from the county jail of McLean county to the Farmers Bank at Chenoa. He was taken into a room at the bank where Kelly was in a chair, partially dressed and in an enfeebled condition. Plaintiff in error was in the room with Kelly for about ten minutes, during which time he was required to take off his hat and walk around. During this time nothing was said by anybody except by the State's attorney, who directed plaintiff in error's movements. Plaintiff in error

was then taken from the room, and all other persons, except Kelly, the State's attorney and Anna Sommers, also left. After some time, plaintiff in error, the court reporter and deputy sheriff Nelson were called back into the room, and after plaintiff in error had again been caused to walk around before Kelly, the State's attorney asked Kelly this question: "Mr. Kelly, is the man that you see sitting on the opposite side of the table in the director's room of the Chenoa State Bank the man that was present in this room at the time Harry Funk held a gun at your head on January 13, 1925?" to which Kelly replied, "Yes, sir; he is." Plaintiff in error was not asked any questions and remained silent. The court, over objection, permitted the court reporter and deputy sheriff Nelson to testify to the asking of this question by the State's attorney, the answer by Kelly and plaintiff in error's silence. Prior to the admission of this testimony counsel for plaintiff in error asked that an examination of the witnesses be conducted in the presence of the court and the absence of the jury for the purpose of determining the competency of the particular line of testimony, and after its admission moved to strike it out upon the ground, among others, that plaintiff in error had been advised by his counsel not to talk about the case. These requests were denied by the court. Plaintiff in error, when testifying as a witness, testified with reference to this matter that he didn't make any statement at that time because he had been instructed by his attorney not to make any statements to anyone unless attorneys were there who would know something about the statements that he made, and that he had no attorney at the bank at that time. In *People v. Nitti*, 312 Ill. 73, the court said: "Both the Federal and State constitutions guarantee to every person accused of crime the privilege of silence, and for three-quarters of a century our Criminal Code has provided that the failure of the accused to testify shall not create any presumption against him. If proof of silence under accusation is of

itself sufficient to justify a conviction of crime, then the provision of the Criminal Code which denies to the prosecution the privilege of commenting upon the fact that a defendant has not testified is not based on reason." In *People* v. *Hanley,* 317 Ill. 39, the court said: "The rule is, that where statements are made in the presence of the accused under such circumstances that he is not in a position to deny them, or if his silence is of a character which does not justify the inference that he should have spoken, or if he is restrained in any way from speaking by fear, doubt of his rights, instruction by his attorney, or reasonable belief that his security would be best promoted by silence, his silence does not amount to an admission of the truth of the statements made and such statements are not admissible as against the accused." Under the circumstances of this case, plaintiff in error having remained silent by reason of the instruction of his attorney, the evidence of the statements and of his silence was not admissible as against him, and of the prejudicial effect of this evidence upon the jury there can be no question.

Plaintiff in error testified denying guilt and stating that on January 13, 1925, he was in New Orleans, rooming at a two-story frame boarding house on Malpomance street kept by a woman about six feet tall, with hair somewhat gray, and that he then and there met Al Cohen as stated in his affidavit for continuance; that he did not know the name of the boarding-house keeper or the street number of the house. In rebuttal the State called a witness, Kate Flucker, a rooming-house keeper from Malpomance street, New Orleans, who was produced by a Burns detective, who she testified had been constantly with her since she left New Orleans until she testified. This witness testified that plaintiff in error occupied a room at her place at one time and that she was almost positive that he was not there on January 13, 1925; that he was in her home between May, 1924, and April, 1925; that a Mrs. Clark turned the house, together

with her roomers and boarders, including plaintiff in error, over to witness on May 5, 1924. The witness had testified that plaintiff in error had only been at her rooming house in New Orleans on one occasion, and she attempted to fix that time as May 5, 1924, and about two weeks thereafter. Plaintiff in error testified, in refutation of Mrs. Flucker's statements as to his being in New Orleans on May 5, 1924, that he was in Glenview, Illinois, during the entire month, and introduced the evidence of bankers, builders and other persons to the same effect. He also sought to introduce in evidence bank checks drawn by him in Glenview on May 5, and the statement of the bank as to his deposits and withdrawals during May, 1924, verified by the testimony of an officer of the bank. On objection of the State's attorney the evidence was refused admission. After the conclusion of the evidence and after two arguments for the prosecution and one for the defense, the court addressed the jury as follows: "Gentlemen of the jury, yesterday morning the court admitted some evidence as to the defendant being in Glenview during the month of May, 1924. On further reflection the court is of the opinion that the evidence should not have been admitted, it not being material to any issue in the case. You will therefore disregard it entirely." The action of the court in striking out this testimony is assigned as error. It was not error for the court to strike out the testimony, as it was immaterial where plaintiff in error was on May 5, 1924. The court, however, should at the same time have stricken out Mrs. Flucker's testimony on that subject, as that testimony raised an immaterial issue.

Many other complaints of error are made by plaintiff in error which are well founded. Among them are, that the court unduly restricted the cross-examination of witnesses with reference to their identification of plaintiff in error and in restricting the cross-examination of witnesses as to their animus in testifying; that counsel for the State were guilty of misconduct in asking improper, insinuating ques-

tions of various witnesses; in asking questions which were so clearly incompetent they could only have been asked for the purpose of prejudicing the jury; and that the State's attorney, the assistant State's attorney and the special attorney of the bankers' association were each guilty of making improper and prejudicial argument to the jury. As we will assume that the mere mention of these matters will prevent their repetition upon a new trial we will refrain from a more detailed discussion of them.

The judgment of the circuit court of McLean county is reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting.