(No. 48216.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FREDDIE LEE LOTT, Appellee.

*Opinion filed April 5, 1977.*

RYAN and UNDERWOOD, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and David DeDoncker, State's Attorney, of Rock Island (James B. Zagel, and Jayne A. Carr, Assistant Attorneys General, of Chicago, and James E. Hinterlong, and Bernard L. Rivkin, of the Illinois State's Attorneys Association Appellate Assistance Service, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, Office of the State Appellate Defender, of Ottawa, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

There are two issues on this appeal: the first question relates to the propriety of the appellate court decision to consider this issue on review; the second question pertains to the soundness of the trial court decision to deny the defense motion for continuance, on the grounds of surprise, to search for surrebuttal witnesses to refute newly introduced probative rebuttal testimony.

The defendant, Freddie Lee Lott, was charged with armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18–2) of the attendant at a service station. Following a jury trial in the circuit court of Rock Island County a verdict of guilty was returned. The Appellate Court for the Third District reversed the conviction, ruling that the denial of the motion for continuance unduly restricted the defendant's opportunity to present surrebuttal testimony in respect to a matter which was critical to the issue of guilt. 33 Ill. App. 3d 779.

During the jury trial the defendant and three alibi witnesses testified that the defendant was at a party on April 18, 1973, at the time of the armed robbery. There was also testimony that the defendant was the victim of a stabbing on the 12th day of April and suffered both anterior and posterior wounds causing a collapse of his right lung for which he had been hospitalized prior to his arrest.

As a rebuttal witness to this defense testimony the State presented Richard Nitz, another resident of the county jail on similar charges. Nitz testified that on April 18 the defendant admitted to him and seven or eight people that he had committed ("done") the robbery in question as well as four others. The defense counsel asked for a recess, then approached the bench outside the presence of the jury and expressed surprise with the Nitz testimony, asking disclosure of any information the State had with respect to the subject matter of the alleged

admission. Cross-examination then proceeded. The defense questioned Nitz as to the other witnesses to the admission. Nitz reiterated the fact that the admission took place in front of seven or eight other people in the cell block, identified the particular cell block, stated that he thought he could remember some of the names, but did not specifically identify anyone when asked to remember. Nitz was questioned further about a black eye he had received from an acquaintance of the defendant. The State again examined Nitz as to the names of the other witnesses, mentioning, with court permission, possible names of men in the lineup with the defendant. Nitz recognized one name, but did not definitely confirm that any of those mentioned was a witness to the admission. The defense asked for discovery of State information to help him impeach the testimony. The jury was dismissed.

Outside the presence of the jury, the court, the State, and the defense acknowledged that Nitz was a surprise witness. There was a heated discussion between adversaries as to the circumstances of the surprise testimony, and the defense proffered its intention, "in the light of the surprises," to find out who the witnesses to the admission were and to call them for rebuttal. The court advised that the motion would be denied. The defense stated that it then would move for a mistrial on the grounds that defendant was denied his only possibility to rebut the additional accusations, extremely prejudicial to him, and that he was denied a fair trial. The motion was denied. The defense moved formally for a continuance to ascertain the surrebuttal witnesses. The motion was denied. The defense then objected again, this time on sixth amendment grounds. Defense counsel reiterated the surprise circumstances and his lack of necessary information for rebuttal. Defendant then took the stand again and denied making the admission.

A written post-trial motion was submitted by the defense delineating the circumstances of the surprise

testimony among other grounds for a new trial and alleging as reversible error the denial of the accused's right to due process and a fair trial with an impartial jury. A supplemental motion was filed annexing six affidavits obtained subsequent to trial from the guards and prisoners in the jail, swearing that Nitz had lied.

First we will consider the question concerning the propriety of the appellate court decision to consider the issue on review.

This court's opinion in *People v. Pickett* (1973), 54 Ill. 2d 280, defined, in the procedural context of appeal and error, the doctrine of waiver:

> "The general rule *** is that the failure by the defendant to raise an issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. [Citations.]" 54 Ill. 2d 280, 282.

From our scrutiny of the trial record we find that a substantive analysis of the post-trial motion and its supplement demonstrates that the issue of prejudice resulting from the denial of the defense motion for a continuance, on the grounds of surprise, to procure surrebuttal witnesses was sufficiently brought to the attention of the trial court and was thereby properly considered as a ground for reversal on review. The post-trial motion requesting a new trial alleged, among other points: the facts and circumstances of the surprise testimony of the inmate Nitz; the fact that the defense had no opportunity to prevent Nitz from testifying that defendant admitted the crime in question as well as other robberies; the fact that defendant's attempt to rebut the surprise testimony, which, the motion asserted, both adversaries had reason to believe was inaccurate or false, had been frustrated; the fact that he brought the circumstances and the problem before the trial court; and the fact

that the court's rulings with respect to this matter prejudiced him and denied his right to due process and a trial before an impartial jury. Further, in the supplement filed to his post-trial motion, defendant alleged the prejudicial effect from the court's rulings upon the surprise testimony of Nitz and the insufficiency of his only permitted opportunity to rebut the damaging testimony by cross-examination. He attached six affidavits from guards and prisoners in the jail swearing that Nitz had admitted lying on the stand, alleging again that he had been denied a fair trial and his due process rights.

Therefore, we hold that the issue of prejudicial error in the denial of a continuance, on the grounds of surprise, to secure surrebuttal evidence was substantively preserved in the defense post-trial motion and its supplement and properly considered on appeal.

We will now consider the soundness of the trial court decision to deny the defense a continuance to search for surrebuttal witnesses to refute the surprise testimony of Nitz that the defendant had admitted to him and to others in the county jail that he had committed the crime.

By statute in Illinois, the granting or refusing to grant a motion for continuance lies in the sound discretion of the court (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e)), and, even absent specific grounds stated in sundry subsections, the court may grant a continuance in the "interests of justice" (Ill. Rev. Stat. 1973, ch. 38, pars. 114—4(d) and (f)). The statute further sets forth one criterion to be entertained in the decision to grant a continuance, the "diligence shown on the part of the movant" (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e)). Section 114—4(h) provides the framework of statutory interpretation for the decision: the continuance provisions are to be construed "to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial."

In *People v. Blumenfeld* (1928), 330 Ill. 474, this

court recognized that a refusal to grant a continuance which results in depriving the accused of a reasonable time to prepare his defense constitutes reversible error. There it was reasoned that the constitutional right of the accused to have the assistance of counsel is not a barren right. It carries with it as a necessary corollary the right of counsel to have adequate time to prepare the defense and the principle that it is a substantial violation of this right to compel counsel to go to trial unprepared. Moreover it was noted:

"While it is highly important that justice should be speedily meted out and that criminals should be punished with celerity and dispatch, it is much more important that before punishment should be inflicted upon a person accused of crime full opportunity should be given to place the court in possession of all the facts bearing upon the question of the guilt or innocence of the accused, so that the court and jury may ascertain the truth as to whether or not the person accused is, in fact, guilty of the crime." *People v. Blumenfeld* (1928), 330 Ill. 474, 489.

This court reemphasized in *People v. Shrum* (1957), 12 Ill. 2d 261, 265, the belief that adequate opportunity to defend is the first essential of trial fairness:

"Speedy administration of justice is desirable, but the desire for speed must not be allowed to impinge upon the constitutional requirement of a fair opportunity to defend."

There is no mechanical test, statutory or other, for determining the point at which the denial of a continuance in order to accelerate the judicial proceedings violates the substantive right of the accused to properly defend. The circumstances of each case must be weighed, particularly the reasons presented to the trial judge at the time the request is denied.

The circumstances of this case evidence that the

testimony of the State rebuttal witness, Nitz, stating that the defendant had admitted the crime to him and to others, was totally unexpected by the defense counsel. In pretrial discovery the defense had moved for the disclosure of any written statements and "the substances of any oral statements made by Freddie Lee Lott and a list of witnesses to the making or acknowledgment of such statements." Neither Nitz nor the substance of the statement purportedly made to Nitz was mentioned in the disclosure answer presented by the State.

At trial, when the State witness testified to the admission under oath, the defense acted with reasonable diligence under the circumstances in cross-examining the witness as to the information in the admission, *i.e.*, as to the crime in question and to the other alleged occurrences. Defense counsel further questioned Nitz carefully as to the place of the admission, the identity of the particular cell block where the alleged other witnesses to the admission were situated on April 18, and to the number and names (which Nitz declined to reveal) of others present. Finally, he questioned Nitz with respect to a disagreement Nitz had encountered with a former acquaintance of the defendant.

The defense then requested a recess and expressed its surprise out of the presence of the jury, asking for disclosure of information from the State relevant to the surprise testimony which would in any way aid the accused in impeachment of the injurious testimony of Nitz. The court, the State and the defense then recognized, on the record, the fact that Nitz was a surprise witness and discussed the circumstances leading to his testimony. The State noted that Nitz was not listed on the list of witnesses given to defendant in discovery because the State had not known of him until an hour before his testimony. Defense counsel maintained that Nitz could be impeached and that, in the light of the surprises, he would like to find out who the other witnesses to the admission were and to call them to testify. Discussion as to the scope of impeachment of

the surprise witness testimony ensued. The defense then stated that if not granted a continuance defendant would be denied the only possibility he had to rebut the additional accusations which were extremely inflammatory and prejudicial to him and which denied him a fair trial. The court denied the motion.

The defense then moved for a continuance to find out who the witnesses were and to subpoena them to rebut the Nitz testimony. The court denied the motion, stating no reasons. The defense responded with a motion for a mistrial on sixth amendment grounds. The motion was denied. Defense counsel again explained the circumstances of his surprise and that he did not know the names of the witnesses he would call to rebut the testimony because all the information with respect to Nitz was solely within the State's control. The trial proceeded.

In *People v. Kuczynski* (1961), 23 Ill. 2d 320, this court held that it was an abuse of discretion to deny the defense a continuance on the grounds of surprise to secure additional witnesses for rebuttal. *Kuczynski,* unlike the case at hand, was a bench trial. The charge in that case was the same, armed robbery. The defendant was one of three men charged with the crime, and witnesses testified that they were unable to make an identification of him at the preliminary hearing. At trial there was surprise testimony by the State that the defendant had been identified by a witness at the hearing. The defense asked for a continuance to procure additional witnesses to explain what happened at the preliminary hearing, but the court denied the motion. This court held this to be reversible error and remanded the cause for a new trial. In that case, there was a lesser danger of harm occasioned by the denial of the continuance because the trial court was informed by the defense counsel of the inconsistency between the testimony in court and the testimony at the hearing. The defense attorney offered to withdraw as counsel in order to testify under oath as to what took place at the hearing,

and the court was in a position to legally weigh the credibility of the witness' surprise testimony on that basis.

In this case, where counsel neither knew of nor was given the opportunity to investigate the circumstances of the incriminating testimony that the defendant admitted the crime to people in the jail, there was even a greater risk of unfair prejudice and confusion of the issues in the minds of the jurors. The probative value of the surprise testimony was substantial. The defense objected and was then denied a continuance to search out evidence and witnesses to contradict the testimony in the minds of the jurors. Defense counsel informed the court that he was unprepared as to the testimony, and he sought discovery from the State on the matter and a continuance. The court denied both. Unlike the counsel in *Kuczynski*, who had been knowledgeable of the fact that the witnesses were testifying and of the circumstances of the evidence at the preliminary hearing, the defense here was totally unaware of the circumstances brought out by the testimony and was unprepared for this development in the case. As such, he could not buttress his request for a continuance by citing concrete information as to the availability of other means of proof he could obtain for rebuttal.

We have determined from the trial record that the denial of a continuance, on the grounds of surprise, to procure surrebuttal witnesses prejudiced the accused's opportunity to adequately defend.

The judgment of the appellate court, reversing the circuit court and remanding for a new trial, is affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN, dissenting:

I dissent from the opinion of the court for two reasons. First, the defendant did not preserve the failure of the court to grant a continuance by raising the issue in his post-trial motion, and, secondly, the evidence of the

defendant's guilt is so strong that any failure of the court to grant a continuance was not prejudicial.

In discussing the continuance question, it must be considered in the context in which it was raised during the course of the trial. Nitz had been called by the State to testify in rebuttal. The defendant did not object. The only objection voiced by the defendant during the direct examination of this witness concerned one question, and the objection was "I object unless he lays a foundation." Nitz' testimony not only implicated the defendant in the armed robbery involved in the trial but also three other armed robberies. The defense counsel then cross-examined the witness concerning the armed robbery in question and the other three. The prosecutor conducted a redirect examination, and again there was only one objection from the defense, and that was because a question was leading. This was followed by re-cross-examination and by further redirect. At no time did the defendant object to any of this testimony. The State then rested and the defense counsel moved that the State be ordered to produce all information in its files that would show that the defendant was not the man who perpetrated the other robberies that Nitz had testified about. It was the other robberies that were the subject of what is referred to in the court's opinion as "a heated discussion between adversaries." The court denied the motion and the defense counsel stated: "Then I am moving for a mistrial on the grounds we are denied the only possibility we have, at this point in time, to rebut *these additional accusations* ***." (Emphasis added.)

The court denied the motion for a mistrial, and the defense counsel stated: "We move that the cause be continued until I can find out who the witnesses in this case are; so I can get subpoenas out to see if I can *rebut this testimony.*" (Emphasis added.) This was the only motion defendant made for a continuance. It was apparently requested so that defense counsel could rebut

"these additional accusations" and not for the purpose urged in this court.

None of the allegations in the post-trial motion relate to the court's failure to grant a continuance. The statement in the majority opinion that "a substantive analysis of the post-trial motion and its supplement demonstrates that the issue of prejudice resulting from the denial of the defense motion for a continuance *** was sufficiently brought to the attention of the trial court" has no foundation in the record. The primary concern of the post-trial motion and the supplement, as well as the argument of defense counsel during the course of the trial, focused on the failure of the State to exonerate the defendant from the other three robberies. The post-trial motion charges that the State caused the court "to make one or more of the following reversible errors ***." Six different errors are then listed, and none of them relate in any way to the court's failure to grant a continuance.

Section 116–1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 116–1) requires that the written motion for a new trial specify the grounds therefor. This court has repeatedly held that the failure to raise an issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. *People v. Pickett* (1973), 54 Ill. 2d 280; *People v. Nelson* (1968), 41 Ill. 2d 364; *People v. Harris* (1965), 33 Ill. 2d 389; *People v. Irwin* (1965), 32 Ill. 2d 441; *People v. Touhy* (1964), 31 Ill. 2d 236; *People v. Greer* (1964), 30 Ill. 2d 415.

A reviewing court may, as a matter of grace, consider errors appearing of record which deprive the accused of a substantial means of enjoying a fair and impartial trial although not properly preserved for review in a case involving a deprivation of life or liberty. (*People v. Burson* (1957), 11 Ill. 2d 360.) However, the waiver rule is not relaxed in situations such as those involved in this case, unless the evidence is closely balanced. (*People v. Black*

(1972), 52 Ill. 2d 544, 552; *People v. Pickett* (1973), 54 Ill. 2d 280, 283.) In the case before us the evidence is not closely balanced.

The granting of a motion for a continuance rests in the sound discretion of the trial court. (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).) Even in cases where the denial of the motion has been properly preserved for review, the ruling of the trial court will not be disturbed unless the defendant has been prejudiced by the denial. *People v. Davis* (1970), 45 Ill. 2d 514.

On April 18, 1973, at approximately 10 p.m., Joel Brown, an attendant at a Clark service station, was robbed. The individual who perpetrated the robbery was wearing a blue denim coat, blue jeans, a black shirt and a black hat, and he used a bayonet as a weapon. The robber took about $20 in coins and also two $5 bills, the numbers of which had been recorded by the service station operator. The $5 bills were kept in the cash register for the specific purpose of identification in the case of a robbery. In addition to the two $5 bills, some other money which Brown was carrying in his pocket was also taken. These bills were mostly of $1 denomination. Brown testified that he knew the defendant and recognized him as a person he had seen around the service station on six or seven previous occasions. He stated that he knew him by the name of "Sonny."

About 2:30 in the morning following the robbery the defendant was driving west on a highway in Rock Island County and apprently was having some trouble with his automobile. A State trooper approached from the opposite direction and stopped. The officer arrested the defendant for a minor offense, after which a bayonet which was partially hidden under the front seat was discovered and was taken from the automobile. Brown, the service station attendant, identified the bayonet as similar to the one used during the robbery. In the course of a subsequent search of the motor vehicle pursuant to a search warrant, a black hat

similar to the one worn by the robber was discovered in the automobile.

When the defendant was taken to the county jail by the police officer a paper bag was taken from his automobile and given to the jailer. The paper bag contained $22 in coins wrapped in a handkerchief. The defendant had $37 in currency in his pocket, mostly $1 bills. However, the jailer testified that there were some $5 bills in the currency taken from the defendant. The $5 bills, along with the other money, were placed in a cash drawer at the jail. The next day when the serial numbers of the two $5 bills taken in the robbery were learned, the currency in the cash drawer at the jail was checked and the two stolen $5 bills were found among the currency in the drawer.

Later a police officer interrogated the defendant at the jail and told him that he was under arrest for the armed robbery of the service station and informed him that they had the two marked $5 bills that had come from the robbery and also told the defendant there had been other similar robberies in the area. The officer then asked the defendant if he wanted to talk about this particular robbery. The defendant then stated, "You have me on this one, but I didn't do the others."

In light of the strong evidence against the defendant, including his statement to the officer which is an admission of his participation in this event bordering on a confession, it is difficult to see what prejudice was occasioned to the defendant by the denial of a motion for a continuance, even if we were to assume that such a motion had been made during the course of the trial and properly preserved for review.

As to the six affidavits filed in support of the supplemental post-trial motion, it is incorrect to say, as the opinion of this court does, that these affidavits swore that Nitz had lied. In only two of the six affidavits is the word "lied" used. In both of these the affiants stated that

defendant asked Nitz why he had turned State's evidence and lied on the witness stand. Nitz did not respond to these questions. In one of the affidavits it is also stated that another inmate "then asked why" and Nitz had replied that he had been threatened. This is the only affidavit from which it can be inferred that Nitz had admitted lying, but it is also capable of being interpreted otherwise.

Trials rarely develop in a routine or predictable manner and are rarely free from error. It is not at all unusual for an after-the-event examination of a trial record to disclose apparent error, especially when attention is focused on one segment lifted from the context of the entire trial. We are not concerned that the defendant's trial be error free. Our concern is that he have a fair trial. When the evidence of guilt is as strong as it is in this case we should not reach back into the record, construe a motion for a continuance made for one apparent purpose as a motion for a continuance made for another purpose, declare the court's failure to grant the motion to be error, and on that ground reverse a conviction even though defense counsel did not consider it of sufficient importance to urge it as a reason for a new trial in his post-trial motion. Some presumption of validity should attach to a judgment of the trial court, and a court on review should not comb the record looking for an excuse to reverse.

MR. JUSTICE UNDERWOOD joins in this dissent.