**UNITED STATES of America ex rel. Ronald A. YOUNG, Petitioner,**

v.

**Hon. Harold FOLLETTE, Warden, Green Haven Prison, and the State of New York, Respondents.**

**No. 69 Civ. 3722.**

United States District Court
S. D. New York.

Jan. 6, 1970.

Ronald A. Young, pro se.

Louis J. Lefkowitz, Atty. Gen., New York City, for respondent Follette; John G. Proudfit, New York City, of counsel.

## OPINION

COOPER, District Judge.

Petitioner, Ronald Young, was convicted of robbery in the first degree in Supreme Court, New York County, on October 4, 1967. His conviction was affirmed by the Appellate Division, First Department, 31 A.D.2d 527, 295 N.Y.S.2d 593 (1968); leave to appeal to the New York Court of Appeals was denied on February 26, 1969. Petitioner now seeks a writ of habeas corpus based upon three claims.

He first claims a violation of his Fifth Amendment right to remain silent in that the prosecuting attorney, in an attempt to impeach petitioner's credibility at trial, brought to light his silence at the time of arrest.

Petitioner at trial sought to establish that he had never participated in the alleged robbery and that in fact such robbery had not occurred. Young testified that on March 2, 1967 he accompanied a friend, Johnny Perez, to a store owned by a Mr. Fleischman, located at 23 East 125th Street (Tr. 122)[1]; that the store's business was to buy and sell used merchandise (Tr. 9), and Perez was planning to sell Fleischman a ring. (Tr. 129–30); that after entering the store, he remained near the front while Perez walked towards the rear to speak with Fleischman; that Perez and Fleischman began arguing, and he approached the two merely to see what the altercation was about (Tr. 137); that as he reached Fleischman's side, a Benjy Derby entered the store, and Fleischman unwarrantedly "yelled to Benjy, 'Hey, these guys are robbing me.'" (Tr. 135). At this point, Young stated, "I turned to leave the store and Mr. Fleischman grabbed me." (Tr. 136). He further testified the two grappled and Fleischman tripped over a chair injuring his head. (Tr. 139–41); that freed from Fleischman's grasp, he ran out of the store (Tr. 144), fell on the sidewalk and was there held and detained by a Mr. Dennis until Patrolman Bellamy arrived. (Tr. 145–6).

On cross-examination, the following occurred: (Tr. 141–4)

Q. Did you ever report to the police that Mr. Fleischman attacked you?

MR. POVERSTEIN [defense counsel]: Your Honor, I am going to object to that question.

THE COURT: Overruled. What is the answer, sir?

THE WITNESS: No.

MR. POVERSTEIN: Your Honor:

THE COURT: Yes?

MR. POVERSTEIN: May I state the reason for my objection? At this point we are coming into an area— we don't even know if the police questioned him at this point, if they asked him that question.

THE COURT: Objection is overruled, sir.

MR. POVERSTEIN: Exception, your Honor.

THE COURT: You have an exception to my ruling.

Q. Did you ever volunteer to the police that Mr. Fleischman attacked you?

A. They never gave me the chance.

Q. You never had the chance?

A. No.

THE COURT: You were in custody, were you not, sir?

THE WITNESS: Yes.

THE COURT: You could talk, couldn't you?

THE WITNESS: No.

THE COURT: You couldn't talk?

THE WITNESS: No.

THE COURT: Did you have something in your mouth?

THE WITNESS: I was in the—when I was in the store they wouldn't let me talk.

THE COURT: Well, in what way?

MR. POVERSTEIN: Your Honor, may I at this time—

THE COURT: Just a minute. Yes.

---

1. "Tr." followed by a number refers to pages of trial transcript.

MR. POVERSTEIN: May I at this time take an objection? And I would like to take the objection outside the presence and hearing of the jury.

THE COURT: No. If you object to this question I will sustain it, Mr. Poverstein. You object to this question.

MR. POVERSTEIN: I object to all the questioning in this area, your Honor.

THE COURT: I will sustain your objection to the last question. Go ahead Mr. Scribner.

BY MR. SCRIBNER [prosecuting attorney]:

Q. Did you ever tell anyone that you were attacked by Mr. Fleischman.

A. No.

MR. POVERSTEIN: Objection your Honor.

THE COURT: Overruled.

MR. POVERSTEIN: Your Honor, may I state at this time the reason for my objection, as I believe the rights of the defendant are being violated, because any defendant, when he is placed under arrest or in custody, he has the right to remain mute, he has a right to be advised of his constitutional rights.

THE COURT: Yes, he has all those rights, but your objection is overruled, sir. You have an exception to my ruling.

MR. POVERSTEIN: Exception.

Q. Did you feel that Mr. Fleischman had committed a crime against you by attacking you?

A. Yes.

Q. But you never told the police that he had committed a crime?

A. No.

■ Our law has long recognized the right of an individual to remain silent at the time of his being taken into custody. United States v. Lo Biondo, 135 F.2d 130 (2d Cir. 1943); Yep v. United States, 83 F.2d 41 (10th Cir. 1936). In Miranda v. Arizona, 384 U.S. 436 (1966) at 468, n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, the Supreme Court stated that once providing a defendant with the right to choose to remain silent, "[i]t is impermissable to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute * * *." See also United States v. Mullings, 364 F.2d 173 (2d Cir. 1966).

■ However, even assuming arguendo, that the highly improper manner by which the prosecution used petitioner's silence constituted a Fifth Amendment violation,[2] we find such error, under the totality of evidence, to be harmless.

The Supreme Court, in Chapman v. California, 386 U.S. 18, 21–22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) rejected the contention that all federal constitutional errors committed at trial must be deemed harmful and thereby require automatic reversal. Rather, the Court reaffirmed the standard "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (Chapman, at 24, 87 S.Ct. at 828).

In Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the Supreme Court, after finding a violation of the Sixth Amendment during the course of the trial, held that "the case against [defendant] was so overwhelming that we conclude that this violation * * * was harmless beyond a reasonable doubt * * *." While we are well aware that the Court in Harrington, citing Chapman, admonished

2. The State's attempted explanation—the "restricted" use of petitioner's silence to impeaching credibility (Affidavit of State, October 14, 1969, p. 6a.)—is most unsatisfactory. See Fowle v. United States, 410 F.2d 48, 51–56 (9th Cir. 1969).

"against giving too much emphasis to 'overwhelming evidence' of guilt,"[3] we find that the evidence against petitioner is so overwhelming as to require a conclusion identical to that reached in *Harrington.*

As in *Harrington,* the case against petitioner Young was not woven from circumstantial evidence. Young did admit that he was at the scene of the crime and that he had fled with Perez. Fleischman testified that Young fully participated in the alleged robbery (Tr. 15–21), and no reference was made by defense counsel on cross-examination to any transaction involving a ring or the possibility of an unprovoked attack by Fleischman upon Young. Benjy Derby, who had entered the store while the alleged robbery was in progress, testified that "I saw two men had him [Fleischman] on the floor." (Tr. 62–3). Dennis, a neighboring shopkeeper, stated that he observed Young "run out [of Fleischman's store] with Mr. Fleischman right behind. \* \* \*" (Tr. 82). Dennis tackled Young and held him until the arrival of three police officers. Extremely damaging to petitioner was the testimony of Dennis and the three police officers that upon searching Young, they found he possessed Fleischman's wallet.[4] (Tr. 71–2, 83–4, 92–5, 102–4). The only evidence defendant offered in opposition was his uncorroborated statement that he had never taken Fleischman's wallet, that the testimony of each of the four witnesses was untrue, and that in fact two of the three arresting officers were not present. (Tr. 148–53).

Thus we find the evidence against Young to be even more compelling than that in *Harrington,* and any error, infringing petitioner's Fifth Amendment right, to be harmless. United States ex rel. Joseph v. La Vallee, 415 F.2d 150 (2d Cir. 1969); United States ex rel. Dukes v. Wallack, 414 F.2d 246 (2d Cir. 1969); See also *United States v. Tucker,* 415 F.2d 867 (2d Cir. 1969); United States ex rel. Weems v. Follette, 414 F.2d 417 (2d Cir. 1969); United States ex rel. Satz v. Mancusi, 414 F.2d 90 (2d Cir. 1969).

Petitioner next claims that reversible error was committed during his cross-examination when he was asked the following questions by the prosecution: (Tr. 126–7)

Q. Do you remember the date May 7, 1964?

A. Yes, sir.

Q. On that date, 11:30 P.M., at 814 East 150th Street, didn't you shoot a person named Willy Thomas?

A. Yes, sir.

Q. Did you shoot him?

THE COURT: I can't hear you.

THE WITNESS: Yes, sir.

Q. You shot him with a gun in the chin and the leg, is that correct?

A. Yes.

Q. Was it because of that incident that you were permitted to plead guilty to the *lesser crime* of attempted assault in the second degree? (emphasis added)

A. Yes.

█ While we strongly condemn this method used by the prosecutor to suggest to the jury that defendant had committed a crime more heinous than his admissable prior record would indicate, we find it insufficient to raise a question of constitutional dimensions.

█ Finally, petitioner's third claim, the failure of the trial court to properly charge on lesser offenses (Tr. 199), must also fail for this same reason.

Accordingly, petitioner's application for a writ of habeas corpus is denied in all respects.

*So ordered.*

---

3. See United States ex rel. Savino v. Follette, 305 F.Supp. 277 (D.C.N.Y.1969), aff'd, 417 F.2d 1070 (2d Cir. decided November 20, 1969).

4. While there was some uncertainty as to which police officer actually found the wallet on Young, all four witnesses agreed that it was in his possession.