(No. 45646.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. WILLIAM QUEEN, Appellant.

*Opinion filed March 29, 1974.*

GOLDENHERSH, J., specially concurring.

John L. Barton, of Streator, for appellant.

William J. Scott, Attorney General, of Springfield, and Martin Rudman, State's Attorney, of Joliet (James B. Zagel and Charles H. Levad, Assistant Attorneys General, and Harry C. Bulkeley (Senior Law Student), of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

William Queen, the defendant, was found guilty of burglary by a jury in the circuit court of Will County and was sentenced to a term of not less than 3 years nor more than 10 years in the penitentiary. The sentence was ordered to run consecutively to two sentences of 1 to 3 years imposed earlier in the circuit court of Perry County for other burglaries. The appellate court affirmed the judgment, with one justice dissenting (*People v. Queen,* 8 Ill. App. 3d 858), and we allowed leave to appeal.

At about 4:30 A.M. on September 24, 1970, two Joliet police officers, James Grace and David Farmer, observed Lawrence Bryan in the vicinity of Gene's tavern in Joliet. Bryan, who, one of the officers testified, had a reputation as a burglar of taverns, emerged from the shadows at the tavern and walked rapidly away from it. Their suspicions aroused, the officers went to the tavern to examine the premises. After checking the front of the tavern for evidence of any entry, they proceeded to the rear of the tavern and observed the door there being slowly closed. There was next a sound of breaking glass in the front of the tavern and shortly thereafter the defendant jumped through a broken window to the sidewalk. The defendant exclaimed: "Don't shoot, don't shoot." He was ordered to lie down and notified he was under arrest. The tavern premises were checked and no one was found in the tavern. The prosecutor, apparently anticipating defense testimony that the defendant was intoxicated, questioned the officers as to whether the defendant had any trouble in walking and whether they had observed any odor of alcohol or other evidence of intoxication. Their answers were in the negative. There was no testimony by the officers that they had advised the defendant of his rights under *Miranda v. Arizona,* 384 U.S. 436. The prosecutor, in asking the policemen whether the defendant had spoken

to them, cautioned them not to state what the defendant had said, apparently believing this would have been inadmissible. He asked them to describe only the defendant's manner of speech. The officers said that while the defendant had spoken little, his speech was not slurred but coherent.

The defendant testified that 2 or 3 days prior to the entry of the tavern he had met Bryan on the street in Joliet and that Bryan had told him of his plans to burglarize Gene's tavern. Bryan told him that he needed money to hire a lawyer because the police were "hot on his trail" for certain crimes and he needed money to engage an attorney. He asked the defendant to help him in the burglary of the tavern and the defendant said he refused. The defendant walked into a department store and Bryan followed him and told him that if he didn't come with him on the burglary that he would implicate the defendant in a crime with respect to which the police were "hot on his trail." He said that Bryan asked him to stand outside as a lookout when Bryan would be burglarizing the tavern. Bryan's plan was to search for money but if none were found he planned to leave and pick up a friend's auto. He would then load liquor from the tavern into the auto. The defendant testified he again refused to participate. The defendant was worried, however, by Bryan's threat and later thought the solution would be to ostensibly participate with Bryan but in reality to plan to have Bryan arrested when committing the crime. His plan was that he would stand outside Gene's Tavern and when Bryan came from the tavern and went to get the friend's automobile to transport the liquor which would be loaded into it, the defendant would enter the tavern and call the police, notifying them of the burglary in progress. The police would arrive and Bryan would be arrested. The defendant did not say what his plan would have been had there been money in the tavern. Bryan's plan, he testified, was to take the liquor and load it in the car only if he did

not find money in the tavern. The defendant testified that his plan was thwarted when Bryan came out of the tavern as a police car was cruising near the tavern. Bryan walked away and the defendant entered the tavern to hide. He said that in attempting to leave the building he broke a window with a tire iron and "dove right into the arms of the police."

On his cross-examination there was this colloquy:

"Q. [prosecutor] Did you ever relate the [above] story to the police?
MR. ANDREANO: [defense attorney] Objection.
THE COURT: Overruled.
THE WITNESS: [the defendant] Not — now, this is the only time I ever said anything about it.
BY MR. POLITO: [prosecutor]
Q. This is the first time you ever related this story?
MR. ANDREANO: Objection.
THE COURT: Overruled.
THE WITNESS: Yes, sir.
BY MR. POLITO:
Q. Why didn't you relate it to the police?
MR. ANDREANO: Objection.
THE COURT: Sustained."

Brief reference was made in the course of the People's extended closing argument to this part of the defendant's cross-examination. The prosecutor said:

"Now, I would like to center on the defendant's version of his story. You will notice that he told no one the story until taking the stand. He did not mention anything to the police. Now if his story is true, why didn't he mention it to the police when he was caught?"

The first contention the defendant makes is that under *Miranda* he had a right to remain silent at his arrest and that error was committed when the trial court permitted the defendant to be asked whether he had told the police of having been coerced by Bryan into taking part in the burglary. This prejudice was deepened, he says, by the prosecutor's reference to the question in final argument.

We do not consider this claim of error can be supported.

Objections should be sufficiently specific to inform the court of the ground for the objection, and a general objection, if overruled, will not preserve the issue for review on appeal. (*People v. Jennings,* 298 Ill. 286, 288-289; *O'Donnell v. People,* 224 Ill. 218, 223-224.) This court noted in *People v. Trefonas,* 9 Ill.2d 92, 98:

> "Objections to evidence should designate the particular testimony considered objectionable and point out the objectionable features complained of. Failure to make proper and timely objection to the admission of evidence claimed to be incompetent or otherwise objectionable *** generally constitutes a waiver of the right to object and cures the error, if any."

See also Wigmore, Evidence, sec. 18 (3d ed. 1940).

Apart from the general objection being insufficient to preserve the question for appeal, the record shows that the defendant did not remain silent at the time of his arrest. He spoke with the officers and they described what he told them as being coherent. What the conversation was between the officers and the defendant does not appear in the record. As we have stated, it would appear the prosecutor apparently considered what the defendant told the police would be inadmissible because of their failure to advise the defendant of his rights. Accordingly, he cautioned the officers not to disclose what the defendant said to them and to confine their testimony to a description of the defendant's speech. Thus, we do not have the question presented of the right of the accused to remain silent.

There was no error here in allowing the defendant to be asked on cross-examination whether he had ever related to the police the story he told on direct examination. The trial court at the conclusion of the case sensibly observed that if a man testifies that at the time of the offense he intended to contact the police and tell them a crime was

being committed, it seemed proper to permit inquiry as to whether he did inform the police. The basic plan of the defendant, according to his testimony on direct examination, was to notify the police of the burglary. A fundamental in testing credibility under these circumstances would be to inquire whether the police were notified.

The defendant next contends that error occurred during the jury's deliberations. While the jury was deliberating, the foreman sent a note to the trial court which read: "Would like the defendant's words on the stand." Whatever discussions took place between the court and counsel do not appear in the record. The People have filed a supplemental record here which contains a statement of the trial judge which is simply to the effect that the prosecutor and the defense attorney were present when he received the note. The record does show that the court sent this reply to the jury: "You must decide on the basis of the testimony heard in the courtroom. I cannot have any testimony of any witnesses read to you/signed/Judge Orenic 2:08 P.M. P.S. Return this paper to me along with the verdict."

The defendant's argument is that the request of the jury was one addressed to the discretion of the trial court and that the trial court erroneously refused to exercise this discretion.

In *People v. Pierce,* 56 Ill.2d 361, we adopted the view that it is within the trial court's discretion to allow or refuse a jury's request for a review of testimony. We consider that the reply of the trial court to the jury must be interpreted as a statement that it did not have discretion to consider the jury's request for a review of the defendant's testimony. There is error when a trial court refuses to exercise discretion in the erroneous belief that it has no discretion as to the question presented. (*People ex rel. Chesapeake and Ohio Ry. Co. v. Donovan,* 30 Ill.2d 178.) Considering the circumstances here, we judge that

the error was of such substance that the cause must be remanded for a new trial. The jury's decision as to the defendant's credibility was a critical factor. We do not know what prompted the request for review, but we judge that the defendant was entitled to have the request considered by the trial court.

It is true that the trial court's reply here resembled the reply given the jury by the trial judge in *People v. Pierce,* where we considered that the judge did exercise discretion. However, we believe that the language here must be distinguished. The court's advising the jury here in its reply that it must decide on the basis of the testimony already heard, followed by the statement that "I cannot have any testimony of any witnesses read to you," convinces us it was a declaration that the court was without discretion.

For the reasons given, the judgments of the appellate court and of the circuit court of Will County are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE GOLDENHERSH, specially concurring:

I agree that the failure of the trial court to consider the jury's request to hear the defendant's testimony in the erroneous belief that it did not have discretion to do so requires remand for a new trial. I cannot, however, concur in the majority opinion insofar as it treats defendant's other claim of error arising out of his cross-examination and the comments of the State's Attorney in final argument. If the opinion stands for the proposition that the objection was not sufficiently specific to preserve the alleged error, then of course the remainder of the discussion is dictum. To so hold, however, would require us to ignore the fact that defendant moved for a mistrial on the same grounds that are here urged for reversal. Whether necessary to the opinion or dictum, I must

respectfully point out that the conclusion reached is clearly erroneous.

I must confess that I find it difficult to understand the reasoning by which the opinion concludes that "we do not have the question presented of the right of the accused to remain silent." There is not one word of testimony by the arresting officers that defendant told them anything concerning the commission of the offense, and the majority's conclusion as to the reason for the prosecutor's failure to ask the witnesses what, if anything, the defendant said is based on pure conjecture. Furthermore, a review of the authorities demonstrates that the "sensible" observation of the trial court to which the opinion alludes resulted in prejudicial reversible error.

It would perhaps be advisable at this point to describe the posture in which this case came before us. In his brief defendant contends that he had an absolute fifth-amendment right to remain silent while in police custody and that the admission of testimony that he did not, prior to trial, tell his story to the police, aggravated by the State's Attorney's comments, resulted in reversible error. In their brief the People argue that "when a defendant chooses to take the stand, he is no longer protected from cross-examination," and that "The logic behind this question was that with such an incredible, yet perhaps exculpatory explanation for his actions, the defendant's failure to relate the story before trial or at his arrest may genuinely reflect on its authenticity." Admitting that "it is improper for the prosecution in its case in chief to comment on the defendant's silence after arrest or at trial" they argue that in this instance "what cannot be intro-duced originally by the State may be used as a truth-testing device if the defendant later takes the stand."

It should be noted that the majority cites no authority in support of its conclusion, and the only conceivable rationale for its holding is stated by Professor Wigmore

(3A Wigmore, Evidence, sec. 1042, at 1056 (Chadbourn rev. ed. 1970)) as follows:

> "A *failure to assert* a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact. This is conceded as a general principle of evidence (sec. 1071 *infra*). There may be explanations, indicating that the person had in truth no belief of that tenor; but the conduct is 'prima facie' an inconsistency."

This rationale can only apply if silence, under the circumstances, is an "inconsistency" and this court has long recognized that there are valid reasons for maintaining silence and that silence maintained under appropriate circumstances is not an inconsistency which may be shown in impeachment of later testimony. In *People v. Pfanschmidt,* 262 Ill. 411, holding that it was reversible error to permit cross-examination concerning the defendant's failure to reply to an accusation, the court said:

> "An admission or confession may be implied from the conduct of the party when charged with a crime or with complicity therein, or when statements are made in his presence affecting him, when the circumstances afford him an opportunity to act or speak in reply and men similarly situated would naturally deny the implied guilt or make explanations or statements. *** If the accused is restrained from making a reply 'by fear, by doubts of his rights, by a belief that his security will best be promoted by his silence, then no inference of assent can be drawn from that silence.' (*Commonwealth v. Kenney,* 53 Mass. 235.) If the accused says he refuses to answer because he is acting under the advice of counsel, or for any other valid reason, the evidence should not be admitted. *** There is no basis in this record to support an argument that plaintiff in

error in any manner acquiesced in the truth of the statements or assertions made in his presence in these various interviews. Would any reasonable man in like circumstances, when he had been advised by his attorney time and again not to talk, be expected to reply to accusations of the kind made in these interviews? Manifestly not." 262 Ill. 411, at 448-450.

Our later cases have consistently held that evidence of silence maintained upon advice of counsel is not admissible. See *People v. Blumenfeld,* 330 Ill. 474, 491-492; *People v. Rothe,* 358 Ill. 52, 57; *People v. Lewerenz,* 24 Ill.2d 295, 299.

In *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court said:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." (*Miranda v. Arizona,* 384 U.S. 436, 468 n.37, 16 L. Ed. 2d 694, 720 n.37, 86 S. Ct. 1602, 1625 n.37.)

This language permits of no construction other than that an accused, in custody, has an absolute right to silence. In view of the fact that maintaining silence upon advice of counsel is not an inconsistency which may be shown in impeachment, I fail to perceive in what manner the maintenance of silence in exercise of the constitutional right defined in *Miranda* may be so construed. To hold otherwise would obviate the rights of an accused to maintain silence and would present him with the Hobson's choice so dramatically demonstrated in *Fowle v. United States* (9th Cir. 1969), 410 F.2d 48, where in rejecting the contention which the People make here the court said:

"We simply cannot adopt an interpretation

of the Fifth Amendment under which one exercising his right to remain silent upon and immediately after his arrest—a right which the Supreme Court has so earnestly sought to guarantee and preserve—is severely prejudiced by his recourse to that cherished right. It would be anomalous indeed if honorable law enforcement officers were required to elaborate upon the traditional fifth amendment warning and advise arrested persons, in effect: If you say anything, it may be used against you. You have the constitutional right to remain silent, but if you exercise it, that fact may be used against you." 410 F.2d 48, at 54.

I agree with the statement of the Court of Appeals in *Johnson v. Patterson* (10th Cir.), 475 F.2d 1066, *cert. denied* (1973), 414 U.S. 878, 38 L. Ed. 2d 124, 94 S. Ct. 64, that:

"When a defendant makes a statement at trial which is inconsistent with an earlier statement his credibility is clearly in question. This rationale does not follow with silence at the time of arrest. *** silence at the time of arrest is not an inconsistent or contradictory statement. Silence at the time of arrest is simply the exercise of a constitutional right that all persons must enjoy without qualification." 475 F.2d 1066, at 1068.

Nor, in order to exclude the evidence of the accused's prior silence, is it necessary that he testify, as was done in *Pfanschmidt* and *Blumenfeld,* concerning the reasons for his silence. The vice inherent in such a requirement is clearly demonstrated in *Fowle* wherein the court said:

"The Government urges that since Fowle chose to testify in his own defense, he must incur the 'cost' of impeaching proof that he had earlier exercised his constitutional right to remain silent. But adopting the Government's position would

require Fowle to bear a significant cost for his initial reliance upon the Fifth Amendment no matter what path he chooses at trial. If Fowle should have foregone his right to testify, that choice would undoubtedly prejudice his interests severely. The Supreme Court has acknowledged this rather evident fact, declaring that it is psychologically impossible for a jury not to apply adverse inferences against a defendant who fails to testify in his own behalf. *See* Bruno v. United States, 308 U.S. 287, 60 S. Ct. 198, 84 L. Ed. 257 (1939). If, on the other hand, Fowle testifies, as he did, his compelled admission that he remained silent when arrested is no less damaging to him on the ultimate issue of guilt. It is not likely that all jurors would find it psychologically possible to restrict the application of such proof to the narrow purpose for its admission—impeachment—notwithstanding the adequacy of jury instructions given by a careful trial judge. *See* United States v. Grunewald, 233 F.2d 556, 572 (2d Cir. 1956) (Frank, J., dissenting), *rev'd,* 353 U.S. 391, 77 S. Ct. 963, 1 L. Ed. 2d 931, 62 A.L.R.2d 1344 (1957)." 410 F.2d 48, at 54.

The weight of authority holds that it is prejudicial error to adduce testimony, or in argument to allude to the fact, that an accused exercised his fifth-amendment right to remain silent. Two of our sister States which previously held to the contrary are now in accord with the better rule. *People v. Bobo* (1973), 390 Mich. 355, 212 N.W.2d 190; *Hines v. People* (Colo. 1972), 497 P.2d 1258; see also *State v. Stephens* (1970), 24 Ohio St. 2d 76, 263 N.E.2d 773; *Fagundes v. United States* (1st Cir. 1965), 340 F.2d 673; *Johnson v. Patterson* (10th Cir.), 475 F.2d 1066, *cert. denied* (1973), 414 U.S. 878, 38 L. Ed. 2d 124, 94 S. Ct. 64; 87 Harv. L. Rev. 882 (1974); *Fowle v. United States* (9th Cir. 1969), 410 F.2d 48; *State v. Greer* (1972),

17 Ariz. App. 162, 496 P.2d 152; *State v. Shing* (1973), 109 Ariz. 361, 509 P.2d 698; *State v. Griffin* (1972), 120 N.J. Super. 13, 293 A.2d 217; *United States ex rel. Young v. Follette* (S.D.N.Y. 1970), 308 F. Supp. 670; *Deats v. Rodriguez* (10th Cir. 1973), 477 F.2d 1023; *United States v. Nolan* (10th Cir. 1969), 416 F.2d 588; *United States v. Arnold* (10th Cir. 1970), 425 F.2d 204.

As stated in *Johnson v. Patterson* (10th Cir. 1973), 475 F.2d 1066, 1068, "It would indeed be irregular and anomalous to warn an accused that he has the right to remain silent, that if he says anything it may be used against him, however, if he does remain silent that too may be used against him. *See* McCarthy v. United States, 6 Cir., 25 F.2d 298; United States v. Brinson, 6 Cir., 411 F.2d 1057; Fowle v. United States, 9 Cir., 410 F.2d 48. This would be the practical effect of allowing the prosecution to use at trial the fact that an accused remained silent, clearly making the assertion of the constitutional right costly."