NOTICE

Decision filed 09/01/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200151-U

NO. 5-20-0151

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 09-CF-2710 |
| | ) | |
| DONALD R. MILLER, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment is reversed to allow for further consideration of the defendant's motion for appointment of a medical expert and further second-stage postconviction proceedings. Additionally, the record shows that postconviction counsel failed to comply with the mandates of Illinois Supreme Court Rule 651(c).

¶ 2    The defendant, Donald R. Miller, appeals the trial court's second-stage dismissal of his amended postconviction petition. The defendant contends that remand for new second-stage proceedings with new counsel is necessary because (1) the trial court failed to recognize it had discretion to appoint a medical expert to assist the defendant during second-stage postconviction proceedings, and (2) postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the following reasons, we reverse and remand for further second-stage proceedings with directions to appoint new counsel for the defendant.

1

¶ 3                                    I. BACKGROUND

¶ 4      Following a jury trial, the defendant was found guilty of first degree murder (720 ILCS 5/9-1(a)(2) (West 2008)) in connection with the death of his three-month-old son, Ashton Miller. The evidence presented at the defendant's jury trial is set forth in detail in this court's prior order, *People v. Miller*, 2013 IL App (5th) 110437-U, and is repeated here only to the extent necessary for this appeal.

¶ 5      On October 26, 2011, the defendant was living with Heather Smith and their two children at the home of the defendant's sister (the Vaughns). At trial, Smith testified that at approximately 8 p.m., she and the defendant were high on heroin and getting ready for bed. Their infant son, Ashton, was acting fussy and was crying. The defendant told Smith that she better get Ashton to stop crying. The defendant took Ashton, shook him, and told him to "shut up." The defendant told Ashton that he could not stand him. The defendant then put his hand over Ashton's face. The defendant also put a pillow over Ashton so that the Vaughns, who lived downstairs, would not hear Ashton crying. According to Smith, the defendant then "punched [Ashton] in the butt." Smith asked if she could take Ashton downstairs to the Vaughns, but the defendant refused. Smith attempted to contact her sister to take Ashton, but her sister was unable to come and get Ashton.

¶ 6      Smith then picked up the infant, who was "breathing hard *** like trying to catch his breath." She took Ashton into the other room because she did not want the defendant to hurt Ashton anymore. Smith laid Ashton face down on the couch and then went back to the bedroom to sleep. She did not hear Ashton the rest of the night. At approximately 4 a.m., Smith woke up and the defendant was already awake. They laid in bed and talked for 15 to 20 minutes before Smith checked on Ashton. When Smith went to check on the baby, the defendant said, "I hope he's not dead." Smith found Ashton unresponsive and purple. Smith testified that Ashton was not in the

2

same position as when she laid him on the couch. Ashton had "scooted up a little" and his face was "buried in the cushions." Smith began screaming that Ashton was dead. The defendant ran downstairs and woke up the Vaughns. The defendant's sister ran upstairs, called 911, and began to administer CPR with the paramedics on the phone.

¶ 7    First responders answered the call for a three-month-old child who was not breathing. When Eddie Lee, the fire chief of the Mitchell Fire Protection District, arrived, two women were attempting to perform CPR on Ashton. Lee took over CPR but found no signs of life. He noticed darkness around Ashton's mouth, nose, and eye area and saw bruising and discoloration. An ambulance crew arrived and took over for Lee. Joe Sullivan, an emergency medical technician for the ambulance service, and his partner took Ashton to the ambulance to continue CPR. Once inside the ambulance, Sullivan could see rigor mortis had already set in. After conferring with a doctor, Sullivan ceased resuscitation efforts and contacted the coroner.

¶ 8    Detective Carol Presson attended the autopsy of Ashton. After the autopsy, Detective Presson interviewed the defendant and Smith. During Smith's second interview, detectives confronted Smith with an information charging her with first degree murder and aggravated battery of a child. Smith then stated, "I don't know if it can help me," and proceeded to tell the detectives about the defendant's mistreatment of Ashton, including the shaking, hitting, and placing of the pillow over him. According to Detective Presson, Smith became more "believable" after being shown the charging document. The detective stated Smith's demeanor changed, her eye contact was better, and she stopped repeating the detective's questions. Prior to this interview, Smith had not informed anyone that the defendant hurt Ashton. Smith had only stated that she laid Ashton face down on the couch.

3

¶ 9    Dr. Raj Nanduri, a forensic pathologist, performed the autopsy on Ashton. Dr. Nanduri noted several injuries to Ashton, including abrasions on his face and bruises on his body. Dr. Nanduri did not observe any signs of disease or sickness in Ashton. Dr. Nanduri opined that the injuries were not caused by Ashton and were inflicted upon him near the time of death. Due to abrasions on Ashton's face and bruises on his body, Dr. Nanduri did not believe Ashton's death was a regular sleep-related asphyxia where a baby is laid on its stomach and unable to get air. Dr. Nanduri concluded that Ashton died from suffocation-type asphyxia and classified Ashton's death as a homicide. Dr. Nanduri testified that the clues found in the autopsy were consistent with what Smith said occurred and that after watching Smith's second interview, Dr. Nanduri's suspicions about the cause of death were confirmed. Dr. Nanduri opined that Ashton was injured, put down, and passed away within approximately 10 minutes of each other. Dr. Nanduri estimated that Ashton had been dead anywhere from four to six hours when he was found, "give or take an hour" either way. Dr. Nanduri testified that Ashton did not die as a result of shaken baby syndrome or sudden infant death syndrome.

¶ 10    The other evidence at trial indicated that the defendant had previously abused Ashton and Smith. This included an incident where the defendant gave Ashton a black eye and asked Smith to tell people this was caused by the dog knocking Ashton off the couch. Other witnesses confirmed seeing Ashton with a black eye and being told the injury was caused by the dog. Finally, Johnny Washington, an inmate at the Madison County jail, testified about two conversations he had with the defendant, who was incarcerated at the same time. According to Washington, the defendant made several incriminating statements about Ashton's death. For example, Washington testified that he asked the defendant if he killed Ashton. The defendant replied, "I was f*** up, but I know I did." The defendant did not present any evidence.

¶ 11    Prior to submitting the case to the jury, the defense requested that the jury be instructed on the offense of endangering the life or health of a child (720 ILCS 5/12-21.6 (West 2010)). The trial court instructed the jury on this offense, but the jury found the defendant guilty of first degree murder. The trial court initially sentenced the defendant to 35 years' imprisonment, but that sentence was later reduced to 30 years. The defendant appealed, arguing that the State had failed to prove him guilty beyond a reasonable doubt. This court affirmed the defendant's conviction. See *People v. Miller*, 2013 IL App (5th) 110437-U.

¶ 12    The defendant filed a *pro se* "Petition for Post-Conviction Relief" (*pro se* petition) raising several claims of ineffective assistance of counsel. The defendant alleged that defense counsel was ineffective for not obtaining a second opinion from a pathologist regarding the manner of Ashton's death. The defendant asserted that Dr. Nanduri was unable to offer an exact explanation as to how the defendant's actions caused Ashton to suffocate. The defendant further asserted that Ashton had been put to sleep by Smith and was placed lying face down in the corner of a couch. The defendant argued that because the manner of death was at issue in his case, defense counsel's failure to obtain an expert opinion as to the manner of death "caused the jury to deliberate without full information." In support of his argument, the defendant attached affidavits from defense counsel, Scott Turner, and counsel for the defendant's direct appeal, Robert Burke.

¶ 13    Turner's affidavit provided the following. Defense counsel averred that one of the issues in the defendant's case was Ashton's cause of death. In order to refute Dr. Nanduri's testimony, defense counsel attempted to contact "Dr. Graham," an expert pathologist the public defender's office had used in the past. According to the affidavit, Dr. Graham was unwilling to assist the defense at trial because he had a working relationship with Dr. Nanduri and was unwilling to provide a contrary opinion. Defense counsel asserted that he had no other option but to seek an

expert outside of the geographical area. Defense counsel averred that after searching in several different areas, he determined the expense of hiring "one of these experts" was more than the public defender's budget could afford. As a result, defense counsel proceeded to trial in the defendant's case without an expert. Defense counsel indicated that he believed he did a more than adequate job of cross-examining Dr. Nanduri but could not "help but think that a pathologist that would contradict the testimony of Dr. Nanduri could have changed the result."

¶ 14    Burke's affidavit provided as follows. Burke averred that he had spoken with Dr. Shaku Teas, an expert in forensic pathology. According to Burke, Dr. Teas "sounded shocked and dismayed" when Burke explained the general testimony used to convict the defendant. Dr. Teas agreed to review the reports, photographs, and testimony in the case and author a preliminary report. Burke gathered the materials requested by Dr. Teas and prepared them for delivery.

¶ 15    In an affidavit from the defendant's father, he indicated that he had received materials from Burke to send to Dr. Teas. The defendant's father further indicated that he sent these materials to Dr. Teas, along with a check for $1500, as payment of an initial fee to begin work on a preliminary report about Ashton's death.

¶ 16    In his *pro se* petition, the defendant also alleged that defense counsel was ineffective for failing to advise the defendant as to the necessity of testifying in his own defense to rebut the testimony of Smith and Washington. The defendant claimed he was told by defense counsel that the State lacked sufficient evidence and that the defendant's testimony was not needed. The defendant included the testimony he would have provided had he been called to testify and asserted that his testimony was necessary. The defendant further alleged that defense counsel was ineffective for failing to call the defendant's mother, his father, his sister, and Franklin Hays as witnesses at trial to rebut Smith's testimony about the day Ashton allegedly received a black eye

6

from the defendant. In support of these allegations, the defendant attached his own affidavit and the affidavits of his father, his sister, and Hays, as well as the grand jury testimony of the defendant's mother.

¶ 17    The trial court advanced the *pro se* petition to the second stage and appointed counsel, John Delaney. The State filed a motion to dismiss, and Delaney subsequently filed an "Addendum to Post-Conviction Petition." In this addendum, Delaney requested the trial court consider a letter, purportedly from Dr. Teas, as part of the defendant's *pro se* petition. The attached letter indicated that Dr. Teas had reviewed the autopsy report, photographs, and some of the transcripts. Dr. Teas opined that the cause of death was an issue and that the case "definitely warrant[ed] a second look in detail." Dr. Teas wrote that she did not see any obvious evidence to conclude that the cause of death was homicidal suffocation. Dr. Teas provided her fees and indicated that she needed to see Ashton's photographs and review the histology slides taken at the autopsy. The trial court held a hearing on the State's motion to dismiss. After hearing arguments from the parties, the trial court took the matter under advisement. The trial court subsequently issued an order granting the State's motion to dismiss, detailing the court's reasons for dismissing the defendant's case.

¶ 18    The defendant appealed the trial court's order of dismissal, arguing that the order should be vacated and the cause remanded for new second-stage postconviction proceedings because Delaney labored under a *per se* conflict of interest and failed to fulfill his duties under Rule 651(c). The defendant also alleged that the trial court erred in dismissing the defendant's *pro se* petition. This court determined that Delaney had a conflict of interest because he represented Smith in her plea negotiations with the State to testify against the defendant at his trial. We issued a summary order vacating the trial court's order and remanded the case for the appointment of new counsel

7

and new second-stage proceedings. *People v. Miller*, No. 5-15-0420 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 19    While his appeal was pending, the defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)), citing Delaney's conflict of interest.[1] The defendant requested that his *pro se* petition be reinstated for new second-stage proceedings. Delaney subsequently filed a motion to withdraw as counsel for the defendant. The trial court granted Delaney leave to withdraw, and new postconviction counsel, Calvin Fuller, was appointed to represent the defendant. Postconviction counsel filed a motion requesting that the defendant's case be returned to second-stage proceedings due to Delaney's conflict of interest.

¶ 20    Ultimately, the defendant's case returned to second-stage postconviction proceedings. The trial court ordered that postconviction counsel be given leave to file an amended postconviction petition.

¶ 21    Postconviction counsel subsequently filed "Defendant's Motion for Appointment of Independent Medical Examiner" (motion for appointment of a medical expert) requesting to have an expert appointed to review the discovery and testify at the defendant's "Second and/or Third Stage Post-Conviction Proceedings." The motion alleged that an expert's testimony would be relevant and material to the defendant's case and "may tend to provide evidence that will lend to [the defendant's] continued assertion that he is Not Guilty of the offenses for which he was convicted."

---

[1]Attached to this petition were two additional letters the defendant had received from Dr. Teas. In these letters, Dr. Teas indicated that she needed to review the histology slides before she could prepare a report. In the second letter, Dr. Teas stated that she was officially retired and that if she did not receive the additional materials soon, she would not be able to review the defendant's case.

¶ 22    Before the trial court heard or ruled on the motion for appointment of a medical expert, postconviction counsel filed "Petitioner's Amended Post-Conviction Motion" (amended petition). The amended petition realleged the general claims included in the *pro se* petition, including that defense counsel was ineffective for failing to obtain the opinion of a second pathologist to rebut Dr. Nanduri's opinion as to Ashton's cause of death. The amended petition referenced Turner's affidavit. The amended petition noted that the court file did not contain a formal motion for the appointment of an expert or requesting funds to hire an expert. The amended petition also referred to Burke's affidavit, alleging it stated that after a preliminary review, Dr. Teas "found multiple differences with the conclusions of Dr. Nanduri" regarding Ashton's cause of death. The amended petition further alleged that Dr. Nanduri's testimony was "beyond flawed and admitted into evidence despite multiple inconsistencies and speculation that was not supported by the record."

¶ 23    The amended petition also alleged that defense counsel was ineffective for failing to object to certain pretrial issues concerning Smith's state of mind and prior mental health issues; that Smith's statement to police was fraught with threats, coercion, and manipulation, rendering her statement incredible; that Smith was under the influence of controlled substances at the time of her statement to police; and that defense counsel was ineffective for failing to object to the State's request to bar the mention of Smith's suicide attempt and prior hospitalization for mental illness. The amended petition further alleged that defense counsel was ineffective for failing to move for a judgment notwithstanding the verdict because the testimony at trial was that the defendant's actions contributed to Ashton's death and that accountability had not been alleged or proven. Finally, the amended petition alleged that defense counsel was ineffective for requesting the jury be instructed on "other charges."

9

¶ 24     Postconviction counsel attached the appellant's brief filed on behalf of the defendant in appeal No. 5-15-0420 to the amended petition. In addition to the allegation of Delaney's conflict of interest, this appellate brief included a claim that Delaney had not complied with Rule 651(c) because he did not fully examine the record of proceedings at trial or supplement the defendant's *pro se* petition with readily available scientific sources that contradicted "key portions of Dr. Nanduri's testimony." For example, the brief cited several scientific sources that suggested Dr. Nanduri's testimony was conclusory and was contradicted by the standards of practice in her profession. The brief also claimed that the trial court erred in dismissing the defendant's *pro se* petition without an evidentiary hearing.

¶ 25     Postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), certifying that he had consulted with the defendant to ascertain his contentions of error in entering a plea of guilty, examined the trial court file and the report of proceedings for the plea of guilty and sentencing hearings, and made any amendments that were necessary for the adequate presentation of any defects in those proceedings. Postconviction counsel also filed a Rule 651(c) certificate, certifying that he had consulted with the defendant in person and/or by mail to ascertain his contentions of deprivation of constitutional rights, examined the record of proceedings at trial "or" the trial court file and report of proceedings of the plea of guilty, and made any amendments to the *pro se* petition that were necessary for an adequate presentation of the defendant's contentions.

¶ 26     The State filed an amended motion to dismiss, and the trial court held a hearing on the State's motion. At this hearing, the trial court addressed the defendant's motion for the appointment of a medical expert. The trial court indicated that it did not think the motion was appropriate for a second-stage hearing. The State objected to this motion and argued that new

evidence is not typically allowed at the second stage. The State contended that the motion was premature. When asked if he had anything to add, postconviction counsel stated that he agreed with the State's assessment of the issue.

¶ 27 The trial court then heard arguments on the State's amended motion to dismiss. During his argument, postconviction counsel alleged an additional claim of ineffective assistance regarding an amendment to the indictment. Postconviction counsel stated that this allegation was not included in the amended petition and that he "just realized that yesterday" as he "was going further through the file." Postconviction counsel did not seek leave to amend the petition, despite this statement. After hearing the parties' arguments on the amended motion to dismiss, the trial court took the matter under advisement.

¶ 28 The trial court subsequently issued an order granting the State's amended motion to dismiss. The trial court's order indicated that it had considered the affidavits attached to the defendant's *pro se* petition, the Dr. Teas letter, and the appellate brief attached to the amended petition. Regarding the defendant's claim that defense counsel was ineffective for failing to obtain the opinion of a second pathologist, the trial court found that neither Burke's affidavit nor Dr. Teas's letter showed that the defendant suffered a substantial constitutional violation as a result of the defense failing to call an expert witness to contradict Dr. Nanduri's testimony. The trial court further found that the defendant's claims that defense counsel was ineffective for failing to advise the defendant as to the necessity of testifying in his own defense; for failing to call the defendant's mother, his father, his sister, and Franklin Hays as witnesses at trial; and for requesting a jury instruction on another offense were barred by waiver but, nonetheless, failed to establish a substantial showing of a constitutional violation. Finally, the order provided that the defendant's

11

remaining postconviction claims not directly addressed in the order were denied. The defendant appeals from the trial court's order.

¶ 29                                    II. ANALYSIS

¶ 30    The defendant contends on appeal that his case should be remanded for new second-stage proceedings with new counsel. He requests that this court direct the trial court to appoint a forensic pathology expert for the defendant because the trial court mistakenly believed it did not have the authority to appoint such an expert. The defendant also contends that remand is required for new second-stage proceedings with new counsel because postconviction counsel failed to comply with Rule 651(c).

¶ 31    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) sets forth a three-stage process through which a defendant may challenge his or her conviction or sentence based upon allegations of a substantial violation of the defendant's state or federal constitutional rights. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 27. At the first stage, the trial court must review the petition and determine whether it is frivolous or patently without merit. *Wallace*, 2018 IL App (5th) 140385, ¶ 27. If the petition survives the first stage, it advances to the second stage where the defendant has a right to counsel. *Wallace*, 2018 IL App (5th) 140385, ¶ 27. Appointed counsel may file an amended petition, and the State may either file an answer or move to dismiss the petition. *Wallace*, 2018 IL App (5th) 140385, ¶ 27. During the second stage of proceedings, the trial court is foreclosed from engaging in fact-finding and must take as true all well-pleaded facts in the petition that are not rebutted by the record. *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 29. If the petition shows a substantial violation of constitutional rights, the petition is advanced to the third stage where an evidentiary hearing is held. *Hotwagner*, 2015 IL App (5th)

130525, ¶ 29. We review the dismissal of a postconviction petition without an evidentiary hearing *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 387-88 (1998).

¶ 32    First, the defendant contends that this court should remand his case for new second-stage proceedings and instruct the trial court to appoint an expert because expert assistance is necessary to properly amend the defendant's postconviction petition to present his claims of constitutional error. Whether to grant a motion for the appointment of an expert in postconviction proceedings is a decision that lies within the trial court's discretion. *People v. Wilson*, 191 Ill. 2d 363, 370 (2000). The trial court commits error when it refuses to exercise discretion based upon an erroneous belief that it has no discretion as to the question presented. *People v. Queen*, 56 Ill. 2d 560, 565 (1974). But not every failure to exercise discretion requires reversal. The trial court's failure to exercise discretion must be assessed in the context of the entire proceeding. *People v. Chapman*, 194 Ill. 2d 186, 224 (2000). Further, the defendant must show that prejudice resulted from the trial court's failure to exercise discretion. *People v. Jones*, 2015 IL App (2d) 120717, ¶ 17.

¶ 33    During the second stage of proceedings, postconviction counsel filed a motion for the appointment of a medical expert. Before the trial court heard this motion, postconviction counsel filed the amended petition. At the hearing on the State's amended motion to dismiss the amended petition, the trial court addressed the motion for the appointment of a medical expert for the first time. The trial court believed the defendant had filed some motions that were not appropriate for second-stage proceedings. The State objected to the defendant's motion for the appointment of a medical expert and asserted that new evidence was not allowed at the second stage of proceedings. The State contended that the motion was premature. The trial court asked postconviction counsel whether he had anything to add. Postconviction counsel stated that he agreed with the State's

13

assessment of the issue. The trial court subsequently heard arguments regarding the State's amended motion to dismiss the amended petition. Thus, the record shows that the trial court was unaware that it had discretion to consider the defendant's request to appoint an expert at the second stage of proceedings. The trial court's failure to recognize that it had discretion here resulted in an abuse of discretion. See *Queen*, 56 Ill. 2d at 565.

¶ 34    We must now determine whether the defendant was prejudiced by the trial court's failure to exercise its discretion. "If defendant can demonstrate that the expert testimony is relevant and material to the trial court's consideration of his post-conviction petition and if the court believes that the expert's opinion would be of assistance in deciding the issues before the court, then the trial court should appoint the expert." *Wilson*, 191 Ill. 2d at 382.

¶ 35    Postconviction counsel filed the motion for appointment of a medical expert so that an expert could review the discovery and "testify [at the defendant's] Second and/or Third Stage Post-Conviction Proceedings." Before obtaining a ruling on this motion, postconviction counsel filed the amended petition without a determination as to whether an expert should have been appointed. At the hearing on the State's motion to dismiss, the trial court offered postconviction counsel an opportunity to discuss the motion for appointment of a medical expert. Rather than attempt to explain to the trial court the legal basis for the motion and the reasons an expert was needed during second-stage proceedings, postconviction counsel essentially abandoned the motion. Consequently, the defendant was not afforded an opportunity to argue why the appointment of a medical expert was needed in his case at the second stage of proceedings.

¶ 36    In the trial court's order dismissing the defendant's amended petition, the trial court noted that the Dr. Teas letter contained "vague and incomplete findings" and that "there is no way for this Court to know whether Dr. Teas' testimony would have helped or hurt" the defendant's case.

14

Had the trial court been properly presented with the motion, supported by caselaw or other evidentiary sources, and heard arguments, it is possible, if not more likely, that the court would have determined that appointing an expert would have been of assistance to the defendant in showing that his defense counsel was ineffective for failing to obtain the opinion of a second medical expert. Specifically, the trial court would have been advised whether the defendant made a substantial showing of a constitutional violation that defense counsel was ineffective for failing to obtain an opinion from a second pathologist as to Ashton's cause of death. Accordingly, we find that the defendant was prejudiced by postconviction counsel's failure to properly present and argue the motion for appointment of a medical expert and the trial court's failure to exercise its discretion to consider appointing an expert witness.

¶ 37    The defendant specifically asks this court to remand with directions to appoint an expert. The appropriate remedy, however, is to remand this matter so that the trial court may exercise its discretion as to the defendant's motion. Doing so will give the defendant an opportunity to fully argue the merits of his motion. This also gives the State an opportunity to respond to the defendant's motion. The court may then exercise its discretion as to whether a second medical expert should be appointed and approve the necessary funds to retain any such expert.

¶ 38    The defendant next argues that postconviction counsel failed to comply with the mandates of Rule 651(c). Under the Act, the right to counsel is statutory rather than constitutional, and the level of assistance guaranteed by the Act is not the same level of assistance constitutionally mandated at trial or on a direct appeal. *Wallace*, 2018 IL App (5th) 140385, ¶ 29. The level of assistance guaranteed by the Act is reasonable assistance. *Wallace*, 2018 IL App (5th) 140385, ¶ 29. To that end, Rule 651(c) sets forth three duties counsel must perform. Counsel must consult with the defendant to ascertain his or her contentions of deprivation of constitutional rights,

15

examine the record of proceedings at trial, and make any amendments to the *pro se* petition that are necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The purpose of Rule 651(c) is to ensure that postconviction counsel shapes the defendant's claims into the proper legal form and presents them to the trial court. *People v. Perkins*, 229 Ill. 2d 34, 44 (2007). Substantial compliance with the rule is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18.

¶ 39    The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *Wallace*, 2018 IL App (5th) 140385, ¶ 31. This presumption may be rebutted by the record. *People v. Russell*, 2016 IL App (3d) 140386, ¶ 10. To overcome this presumption, the defendant must demonstrate counsel's failure to substantially comply with the duties required by Rule 651(c). *Profit*, 2012 IL App (1st) 101307, ¶ 19. Our review of whether postconviction counsel provided the required level of assistance is *de novo*. *Wallace*, 2018 IL App (5th) 140385, ¶ 31.

¶ 40    Here, the record rebuts the presumption that postconviction counsel complied with the mandates of Rule 651(c) because the record shows that counsel failed to amend the petition to adequately present the defendant's contentions. In amending the defendant's *pro se* petition, postconviction counsel reasserted the general claims set forth in the *pro se* petition and added additional claims of ineffective assistance of counsel. Because postconviction counsel included these claims in the amended petition, we presume counsel determined the allegations were not frivolous. See *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 22 (citing *People v. Greer*, 212 Ill. 2d 192, 205 (2004)). If postconviction counsel had determined that the defendant's claims were meritless, counsel could not, in good faith, file an amended petition on behalf of the defendant. *Greer*, 212 Ill. 2d at 205.

16

¶ 41 The new claims of ineffective assistance of counsel asserted in the amended petition included, but were not limited to, defense counsel was ineffective for failing to object to certain pretrial issues regarding Smith and her "applicable state of mind and prior mental health issues"; defense counsel did not object to the State's request to bar mention of Smith's suicide attempt and prior hospitalization for mental illness; and defense counsel was ineffective for requesting that the jury be instructed on "other charges."

¶ 42 The problem with these allegations is that they are conclusory in nature, not supported with facts, and make no allegation that the defendant was prejudiced by defense counsel's allegedly deficient performance. Thus, these allegations were insufficient to state a viable claim of ineffective assistance of counsel. See *People v. Rissley*, 206 Ill. 2d 403, 412 (2003) (all well-pled facts in the postconviction petition and affidavits are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are insufficient to require a hearing under the Act); see also *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel was deficient and that this deficiency prejudiced the defendant). The filing of the amended petition, without sufficient detail to support the conclusory allegations, was not reasonable assistance of counsel.

¶ 43 Finally, postconviction counsel attempted to raise a new claim of ineffective assistance of counsel during the hearing on the State's motion to dismiss. Postconviction counsel claimed that defense counsel may have been ineffective for failing to raise an objection regarding an amendment to the indictment. Postconviction counsel claimed that he "just realized that yesterday" as he was "going further through the file." Postconviction counsel did not request leave to amend the defendant's postconviction petition to include this claim and provide support for the allegation. Again, we presume postconviction counsel believed the claim was not frivolous because he sought

17

to assert it, although in an improper manner. Thus, postconviction counsel's performance in this regard was not reasonable. See *People v. Kirk*, 2012 IL App (1st) 101606, ¶¶ 31, 36.

¶ 44    We note that postconviction counsel filed certificates pursuant to Rules 604(d) and 651(c). In doing so, postconviction counsel certified that he consulted with the defendant about his contentions of error in entering a plea of guilty, reviewed the report of proceedings of the plea of guilty, and made amendments necessary for the adequate presentation of any defects in plea proceedings. But the defendant did not plead guilty, and it was impossible for counsel to do as he certified. Postconviction counsel's conduct here was more than a mere scrivener's error. While postconviction counsel's carelessness in filing a proper certificate in this case does not alone prove his unreasonableness, it does further undermine any contention that he provided reasonable assistance.

¶ 45    Under the totality of the circumstances in this case, we are not confident in the assistance which postconviction counsel provided and find that counsel's performance fell below the level of assistance required by Rule 651(c). When postconviction counsel fails to comply with the duties of Rule 651(c), remand is required regardless of whether the defendant's postconviction claims have merit. *Russell*, 2016 IL App (3d) 140386, ¶ 12.

¶ 46    In sum, we vacate the judgment of the trial court dismissing the defendant's amended petition and remand for new second-stage proceedings with new counsel. On remand, the trial court shall allow the defendant to replead his motion for the appointment of a medical expert and hold a hearing on the motion, provided the defendant pursues such a motion. Regardless of the trial court's ruling on any motion for the appointment of a medical expert, the trial court shall also allow the defendant to replead his postconviction petition with the assistance of new counsel. We

18

take no position on the merits of the defendant's postconviction claims, but remand is necessary here to ensure compliance with Rule 651(c).

¶ 47    Reversed and remanded with directions.